## Commonwealth ex rel. *v.* Warren.

217    163
38SC  1432

*Public officers—Dairy and food commissioner—Statutes—Constitutional law—Quo warranto—Act of March 13, 1895, P. L. 17.*

As the Act of March 13, 1895, P. L. 17, providing for the establishment of a department of agriculture is constitutional, and as the appointment of a dairy and food commissioner under the act is a valid appointment, the incumbent of the office of dairy and food commissioner cannot be ousted from his office in quo warranto proceedings,

merely because subsequent acts of assembly have conferred upon him illegal and unconstitutional powers.

Where the courts have determined that a public officer is holding a lawful office, they will leave the question of his right to exercise alleged forbidden powers to be raised in some proceeding other than quo warranto, in which specific acts said to be performed by him under statutory powers prohibited by the constitution, may be set forth and inquired into, and restrained, if unlawful.

Argued Oct. 9, 1906.  Petition for quo warranto.  Miscellaneous Docket, No. 2, page 278.  Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ.

The petition was as follows :

" And now, to wit, May 1, 1906, comes Hampton L. Carson, the attorney general of the commonwealth of Pennsylvania, and files this suggestion and gives the court to understand and be informed :

" 1. That on the dates named the legislature of the state of Pennsylvania enacted the following statutes :

" A.  The Act of May 26, 1893, P. L. 152, entitled ' An act to enlarge the powers of the state board of agriculture, to authorize the said board to enforce the provisions of the act entitled ' An act for the protection of the public health, and to prevent adulteration of dairy products and fraud in the sale thereof,' approved May 21, A. D. 1885, and of other acts in relation to dairy products ; to authorize the appointment of an agent of the said board, who shall be known as the dairy and food commissioner, and to define his duties and fix his compensation, being supplementary to an act entitled ' An act to establish a state board of agriculture,' approved May 8, A. D. 1876.'

" B.  The Act of March 13, 1895, P. L. 17, entitled ' An act to establish a department of agriculture and to define its duties and provide for its proper administration.'

" C.  The Act of June 26, 1895, P. L. 317, entitled ' An act to provide against the adulteration of food and providing for the enforcement thereof.'

" D.  The Act of June 26, 1895, P. L. 318, entitled ' An act to amend an act entitled ' An act for the protection of the public health and to prevent the adulteration of dairy products

and fraud in the sale thereof,' approved May 21, 1885, providing for the payment of one-half of the amount of fines recovered into the county treasury of the proper county and the other half to the dairy and food commissioner for the use of the department of agriculture for the enforcement of the act.'

" E. The Act of July 5, 1895, P. L. 605, entitled ' An act to enlarge the duties of the state food commissioner, authorizing him to enforce all laws against the adulterations or impurities in vinegar, jellies, cider, evaporated apples and all apple products and the unlawful labeling in the state of Pennsylvania.'

" F. The Act of June 18, 1897, P. L. 168, entitled ' An act providing for the regulation of the manufacture and sale of distilled and fermented vinegar, prescribing their standard, to prevent the adulteration of the same, providing for the enforcement thereof, and punishment for the violation of the same.'

" G. The Act of June 23, 1897, P. L. 202, entitled ' An act to prevent fraud and deception in the manufacture and sale of cheese, and defining what shall constitute the various grades of cheese, providing rules and regulations for marking and branding the same, providing for the enforcement of this act, prescribing penalties for its violation.'

" II. The Act of May 2, 1901, P. L. 123, entitled ' An act relative to adulteration of natural fruit juice and providing penalties for violations thereof.'

" I. The act of May 29, 1901, P. L. 327, entitled ' An act to prohibit the manufacture and sale of oleomargarine, butterine and other similar products, when colored in imitation of yellow butter ; to provide for license fees to be paid by manufacturers, wholesale and retail dealers, and by proprietors of hotels, restaurants, dining rooms and boarding houses ; for the manufacture or sale of oleomargarine, butterine or other similar products, not colored in imitation of yellow butter ; and to regulate the manufacture and sale of oleomargarine, butterine or other similar products, not colored in imitation of yellow butter, and prevent and punish fraud and deception in such manufacture and sale as an imitation butter ; and to prescribe penalties and punishment for violations of this act,

and the means and the method of procedure for its enforcement, and regulate certain matters of evidence in such procedure.'

" J. The Act of July 10, 1901, P. L. 643, entitled ' An act defining boiled or process butter ; designating the name by which it may be known ; providing for the licensing of manufacturers and dealers therein, and regulating the sale and labeling of the same so as to prevent fraud and deception in its sale ; providing punishment for violations of this act, the methods of procedure for its enforcement, and certain matters of evidence in such procedure.'

" K. The Act of March 28, 1905, P. L. 64, entitled ' To prohibit the selling, shipping, consigning, offering for sale, exposing for sale, or having in possession with intent to sell, as fresh, any meat, poultry, game, fish or shell fish which contains any substance or article possessing a preservative or coloring character or action ; making the same a misdemeanor ; and to prescribe penalties and punishment for violations, and the means and the methods of procedure for the enforcement thereof.'

" 2. That the said act of March 13, 1895, created an official department of the commonwealth of Pennsylvania to be known as the department of agriculture, and established as subordinate thereto an officer to be known as the dairy and food commissioner, which said officer was to be appointed by the governor for the term of four years. Covering the duties of the said dairy and food commissioner, the said act, sec. 4, provides that the said official shall ' perform the duties prescribed by an Act approved May 26, 1893.' The latter act, sec. 2, provides as follows : ' The said agent (dairy and food commissioner) shall be charged . . . . with the execution and enforcement of all laws now enacted or hereafter to be enacted in relation to the adulteration or imitation of dairy products.'

" 3. That, excepting the said acts of May 26, 1893, and of March 13, 1895, all of the acts above named prohibit the adulteration of food and provide that the enforcement of their various provisions shall be undertaken by the said dairy and food commissioner.

" 4. That the constitution of the state of Pennsylvania, adopted November 3, 1873, contained, sec. 27, art. 3, the fol-

lowing clause: 'No state office shall be continued or created for the inspection or measuring of any merchandise, manufacture or commodity; but any county or municipality may appoint such officers when authorized by law.' The said constitution, by virtue of sec. 1 of 'Schedule,' became operative on January 1, 1874, and still is operative throughout the commonwealth of Pennsylvania.

"5. That the defendant, B. Harry Warren, was, on April 1 1903, appointed by Honorable Samuel W. Pennypacker, Governor of the Commonwealth of Pennsylvania, to fill the said office of dairy and food Commissioner. That since the date of his appointment the said defendant, under color of the acts of assembly above named, has used and exercised, and still doth use and exercise, the said office of dairy and food commissioner, without warrant or lawful authority therefor; and that, under color of the said statutes and of the said office, the said defendant has usurped and exercised, and still doth usurp and exercise, the power of a state officer for the inspection of merchandise, without warrant or lawful authority therefor, to the great damage and prejudice of the commonwealth and its fundamental laws, in the manner following, to wit: The said dairy and food commissioner, between April 1, 1903, and the present time, has appointed divers agents, chemists and attorneys, by name unknown to your petitioner. That the said dairy and food commissioner and the said agents, under the authority and direction of the said dairy and food commissioner, have visited various retail grocery stores, wholesale grocery stores and manufacturing establishments throughout the state, exercising the right of full access, egress and ingress to such stores and establishments and also exercising the power and authority to open packages, cans or vessels, and the power to take from said packages, cans or vessels samples of the contents thereof; that the said dairy and food commissioner and his said agents, acting under his direction and authority, have procured at said stores and establishments samples of food products, the object of the taking of said samples being the examination and inspection thereof in order to determine whether criminal prosecutions should be instituted against any person by the dairy and food commissioner for the violation of the various pure food statutes of the state of Pennsylvania. That the said samples have been by

the said dairy and food commissioner, and by his said agents acting under authority and direction of the said commissioner, placed in the hands of the chemists appointed by the said commissioner; that the said chemists, under direction and authority of the said commissioner, have analyzed and inspected said samples of food products, and following same have rendered to said commissioner reports of the results of said analysis and inspection, with the opinion and advice of said chemists thereon as to whether criminal action, based upon the composition of said samples, as disclosed and revealed by said analysis and inspection, should be instituted against any person. That the said commissioner, acting upon the advice and opinions contained in said chemists' reports, has in many cases authorized and instructed his said attorneys to institute criminal proceedings, under the various statutes previously referred to, against retail grocers, wholesale grocers and manufacturers; which said criminal proceedings have been instituted by said attorneys, and said defendants mulcted in fines and costs. That in addition to the above, the said B. Harry Warren, dairy and food commissioner; Oliver D. Schock, assistant dairy and food commissioner; Robert M. Simmers, special agent of the dairy and food commissioner; W. A. Hutchinson, agent, together with certain other agents and representatives of the dairy and food department unknown to your petitioner, have visited retail grocery stores, wholesale grocery stores and manufacturing establishments, after purchasing samples of various food products, have themselves examined and chemically inspected said samples of food, notably butter and milk, using for the examination and inspection of butter a chemical test known as the "Spoon test," and using for the examination and inspection of milk a chemical test known as the "Tube test;" that if the examinations and inspections thus made by said dairy and food commissioner and his subordinates indicated the adulteration of the said article, samples thereof were taken and placed with the aforesaid chemists for further analysis and inspection as aforesaid.

"Whereupon the said Hampton L. Carson, attorney-general, makes this his suggestion and complaint against the said B. Harry Warren, that a writ of quo warranto may be granted by your Honorable Court and be directed to issue

against the said B. Harry Warren, to show by what authority he, the said B. Harry Warren, claims to possess and exercise the office of dairy and food commissioner and by what authority he exercises the powers of a state officer for the inspection of merchandise under color of the said office.

" Hampton L. Carson,<br>" Attorney-General."

The demurrer was as follows :

And now, to wit : May 11, 1906, B. Harry Warren, defendant above named, reserving all rights and legal instructions, demurs to the suggestion and complaint for writ of quo warranto in above case, and for cause thereof avers that the same is insufficient in law to justify the demands contained in the writ issued, that he " show by what authority he . . . . claims to possess and exercise the office of dairy and food commissioner and by what authority he exercises the powers of the said office for the inspection of merchandise under color of the said office," for the following reasons :

1. The title of defendant to the office of dairy and food commissioner is admitted, to wit : appointment thereto by the governor of the commonwealth.

2. The acts of assembly recited and set forth in said suggestion and complaint, as defendant is informed by counsel and believes, are valid and not in conflict with the constitution of the state.

3. Even if certain sections of the said acts of assembly should be held to be unconstitutional, as averred, the validity of said office would not be affected thereby, said sections not applying to the creation of the office, or his appointment thereto, and not being necessary to enable him to perform its duties, and he having official duties to perform other than those charged in the suggestion and complaint as being illegal.

4. The acts performed by the defendant and his agents as set forth in the fifth section of the suggestion and complaint are not those of inspectors of merchandise and do not evidence that said office is a state office for the inspection of merchandise as contemplated and prohibited by section 27, article III, of the constitution, the only examination and analysis being made after the samples of food were procured by purchase, and when the goods were the property of the defendant or his agent, the

purpose being to ascertain whether or not they were adulterated and the pure food laws of the commonwealth violated.

5. Even if the acts of said agents in procuring samples be considered illegal, no inspection of merchandise is contemplated or authorized by the said acts of assembly, and they and other acts committed by the defendant and his agents in the enforcement of said acts of assembly could not affect their validity of defendant's title to said office.

*Elton J. Buckley* and *John H. Fow*, for petitioner—Under the modern proceedings in the nature of quo warranto, not only the title to the respondent's office, but the constitutionality of the various acts of assembly under which the respondent holds his office and exercises his powers, may be examined; Com. v. Dentworth, 145 Pa. 172; Hinze v. People, 92 Ill. 406.

Inasmuch as the act of May 26, 1893, as amended by the act of March 15, 1895, contains no provisions except those creating the office of dairy and food commissioner, and clothing him with power of inspection under existing and future laws forbidding the adulteration of dairy products, the entire act is unconstitutional, because it comprehends but one purpose, and that unconstitutional. Also that such portions of all subsequent statutes which provide for their enforcement by the dairy and food commissioner are unconstitutional, though the residue of the latter acts, forbidding the adulteration of food, is constitutional: State ex rel. v. Dousman, 28 Wis. 541; Warren v. Mayor, etc., 68 Mass. 84; In re East Grant Street, 121 Pa. 596; Com. v. McKeesport Wharfboat Co., 11 Pa. Dist. Rep. 215; Com. v. Houseman, 11 Pa. Dist. Rep. 480.

*S. J. M. McCarrell, Cyrus Gordon* and *Hampton L. Carson*, attorney general, with them *Chas. L. Brown* and *T. L. Vandershice*, for appellee.—The only judgment in quo warranto is ouster from office. The incumbent's conduct is not in issue unless it amounts to forfeiture of office: Cleaver v. Porter, 34 Pa. 283.

Opinion of Mr. Justice Brown, March 4, 1907:

This is an original proceeding before us to test the constitu-

tionality of the office of respondent as dairy and food commissioner of the state.   The issuance of the writ of quo warranto was requested by the attorney general because he felt that the questions raised in the complaint required determination here in the first instance, but he properly, as the law officer of the state, associated himself with counsel for respondent in support of the constitutionality of the act under which the governor made the appointment.

By the Act of March 13, 1895, P. L. 17, the department of agriculture was established.   It is administered by an officer known as the secretary of agriculture, appointed by the governor.   This act is neither supplementary to nor amendatory of any other act, but is a piece of independent legislation, creating a new department of state government and providing for its proper administration.   By the Act of May 26, 1893, P. L. 152, the powers of the state board of agriculture were enlarged, and for the purpose of securing the enforcement of the provisions of laws concerning dairy products, the president of that board was authorized to appoint as his agent a dairy and food commissioner, but the appointment to that office, which is now held by the respondent, is made without regard to the act of 1893.   Its provisions are not involved in this proceeding except as a reference is made in the act of 1895 to the duties imposed by it upon respondent.   After providing for the establishment of a department of agriculture, to be organized and administered by an officer to be known as the secretary of agriculture, the second and third sections of the act of 1895 define in detail the duties of that officer.   He is charged with the administration of all laws designed to prevent fraud or adulteration in the preparation, manufacture or sale of articles of food.   By the fourth section the governor is authorized to appoint a deputy secretary and four other officers of the department, one being the dairy and food commissioner.

The act of 1895, creating the department of agriculture, contravenes no constitutional provision.   It is a piece of legislation passed in the interest of the public health and the general welfare, and neither the head of the department nor any one of the four subordinate officers fills an office, the creation of which is forbidden by the constitution.   Nothing is said in the

act as to the powers of the dairy and food commissioner, and it cannot, therefore, be said that the respondent ought to be ousted because he is exercising powers which the legislature, in the act authorizing his appointment, attempted to confer upon him in violation of the constitution. He is simply directed to perform, under the supervision of the head of the department, the duties which had been imposed upon the dairy and food commissioner when that officer was appointed by the president of the state board of agriculture, under the act of 1893, and that act is to be read in connection with the act of 1895, simply for the ascertainment of what duties had been imposed by it upon the dairy and food commissioner, and which the act of 1895 requires him to perform. Turning to the act of 1893, we find the duty imposed upon the agent of the state board of agriculture, now the dairy and food commissioner appointed under the act of 1895, to be the execution and enforcement of all laws then in force, or thereafter to be enacted, in relation to the adulteration or imitation of dairy products. By the act of 1893, the state board of agriculture was charged with the enforcement of the provisions of the Act of May 21, 1885, P. L. 22, and, for the purpose of securing the enforcement of the provisions of that act or any other act concerning dairy products, it was authorized to appoint an agent, to be known as dairy and food commissioner, charged under its direction with the execution and enforcement of said laws. The act of 1885, which was the act intended to be enforced, is a constitutional piece of legislation : Powell v. Commonwealth, 114 Pa. 265 ; 127 U. S. 678. The only judgment that can be entered against the respondent in this proceeding is ouster, and, having been appointed by the governor under a statute authorizing his appointment, which in itself contravenes no clause of the constitution and confers upon him no powers to be exercised by virtue of his office forbidden to be exercised by any state officer, his title to the office cannot be questioned.

But the complaint of the petitioners, at whose instance this writ was applied for, is that the respondent, under color of the act of 1895, under which he was appointed, and others set forth in the suggestion, has usurped and is exercising the power of a state officer for the inspection of merchandise, in violation of art. III. sec. 27 of the constitution, which provides that,

" No state office shall be continued or created for the inspection or measuring of any merchandise, manufacture or commodity, but any county or municipality may appoint such officer when authorized by law." If other acts than that of 1895, under which the respondent admittedly was appointed and by which his duties alone are defined, confer powers upon him which he cannot be permitted to exercise, we are not to pass upon them in this proceeding. If he has been appointed to a lawful office, carrying with it by the words of the act creating it no constitutionally forbidden powers, he is not to be ousted because subsequent legislation may have conferred such powers upon him. His right to hold a lawful office is one thing ; his right to exercise enlarged powers which he may not lawfully exercise is another, and, having determined that he is holding a lawful office, we leave the question of his right to exercise alleged forbidden powers to be raised in some other proceeding, in which specific acts said to be performed by him under statutory powers prohibited by the constitution may be set forth and inquired into and restrained, if unlawful.

In this proceeding the judgment must be for the respondent on his demurrer, and the prothonotary is directed to enter it.