## Commonwealth ex rel. *v.* Humphrey et al.

*Constitutional law—Police power—Engineering—Act of May 25, 1921, P. L. 1131—Licensing of engineers.*

1. If the Act of May 25, 1921, P. L. 1131, be treated as covering the single subject of the regulation of the practice of the profession of engineering, it does not, in requiring the licensing of professional engineers, go beyond the police power of the state,

2. The police power extends to the protection of the lives, health and property of the citizens.

3. The protection of property owners, against both fraud and incompetency on the part of those with whom they must deal, is a consideration to bring a statute within the police power of the state, if those whose calling the act regulates, are obviously important in number and the subject involved is one which calls for integrity, skill and competence.

4. Under what circumstances the safety and welfare of the community requires the protection afforded by a professional registration act, is primarily for the legislature to decide.

5. When the legislature concludes that engineers, who have to do with the construction of our great bridges, reservoirs and buildings, together with other structures which touch the daily life of all the people, must have their qualifications certified by the state, the courts will not say that such legislation, is, prima facie, an abuse of the police power.

*Constitutional law — Unreasonable classification — Classification of engineers for registration—Act of May 25, 1921, P. L. 1131— Act of Congress of February 4, 1887.*

6. Legislation is unconstitutional where it involves a classification which unwarrantably interferes with the equality of opportunity of "acquiring, possessing and protecting property" guaranteed by section 1, article I, of the State Constitution.

7. The Act of May 25, 1921, P. L. 1131, which provides that it shall be unlawful to practice engineering in this State without being duly licensed, is unconstitutional as providing for an unwarrantable classification, because it exempts from the operation of the act the "officers and employees of a corporation engaged in interstate commerce as defined" by the Act of Congress of February 4, 1887, thus allowing such persons to freely practice the profession of engineering in Pennsylvania (not alone while engaged in interstate commerce) and obliging those who would know the law of this State to go to an act of Congress and read it into our statute, which, speaking generally, is forbidden. Com. v. Alderman, 275 Pa. 483 distinguished and explained.

8. If a part of the act which is unconstitutional in its operation is independent of, and readily separable from, that which is constitutional, so that the latter may stand by itself, as the reasonable and proper expression of the legislative will, it may be sustained as such; but if the part which is void is vital to the whole, or the other provisions are so dependent upon it, and so connected with it, that it may be presumed the legislature would not have passed one without the other, the whole statute is void.

9. As the Act of 1921 has no clause by which the remainder of the act is saved where a particular clause is declared unconstitutional, and as the provisions relating to exemptions are vital to the whole, the act as a whole is unconstitutional.

*Constitutional law—More than one subject—Registration of engineers and land surveyors—Act of May 25, 1921, P. L. 1131.*

10. The Act of May 25, 1921, P. L. 1131, entitled "An Act to regulate the practice of the profession of engineering and of land surveying," etc., is probably unconstitutional as containing more than one subject of legislation, inasmuch as it treats, both in its title and throughout all of its provisions, "engineering" and "land surveying" as two distinct professions and two distinct subjects, but this case is not decided on that point.

11. It is no answer to the argument against the constitutionality of the act, to say that a land surveyor may justifiably be regarded as a minor engineer, inasmuch as the legislature designedly chose to treat him otherwise.

12. Nor is it an answer to argue that in several other instances learned professions have been divided into different branches by the legislature and dealt with in a single bill; for when these instances are examined, it will be found that in each of them the legislature plainly treated the main subject as including minor branches.

13. Not decided whether section 29 of the Act of May 25, 1921, relating to the approval of contracts for public improvements, contains a third and separate subject of legislation.

Argued January 3, 1927. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Original quo warranto proceedings in the Supreme Court, No. 6, Miscellaneous Docket, in case of Commonwealth ex rel. George W. Woodruff, Attorney General, v. Richard L. Humphrey et al., Members of the State Board for the Registration of Professional Engineers and Land Surveyors.

The facts appear by the opinion of the Supreme Court.

*M. J. Martin,* for plaintiff.—The title to the act in question contains more than one subject and the bill itself contains more than one subject, which is not clearly

expressed in its title: Perkins v. Phila., 156 Pa. 554; Payne v. Boro., 168 Pa. 386; Union Pass. Ry. Co.'s App., 81½ Pa. 91.

This is not a valid exercise of the police power of the Commonwealth: Wilson v. Edwards, 32 Pa. Superior Ct. 295; Lawton v. Steele, 152 U. S. 133.

The act contemplates the taking of property without due process of law: Brown v. Hummel, 6 Pa. 86; Fetter v. Wilt, 46 Pa. 457; Craig v. Kline, 65 Pa. 399; Palairet's App., 67 Pa. 479; Godcharles v. Wigeman, 113 Pa. 431.

The act violates the 14th Amendment of United States Constitution: Yick Wo v. Hopkins, 118 U. S. 220; Collins v. New Hampshire, 171 U. S. 30; Com. v. Zacharias, 181 Pa. 126; Sayre Boro. v. Phillips, 148 Pa. 482.

*Wm. A. Schnader,* Special Deputy Attorney General, with him *George W. Woodruff,* Attorney General, for defendant.—The act relates to only one subject: Com. v. Snyder, 279 Pa. 234; Dorsey's App., 72 Pa. 192; Kelley v. Twp., 154 Pa. 440; Com. v. Hospital, 198 Pa. 270; Com. v. Seibert, 262 Pa. 345; Com. v. Byrd, 64 Pa. Superior Ct. 108; Com. v. Heller, 277 Pa. 539; Com. v. Powell, 249 Pa. 144; Minsinger v. Rau, 236 Pa. 327.

The Act of May 25, 1921, does not violate article IV, section 2, of the Constitution of the United States: Slaughter House Cases, 83 U. S. 36; Bradwell v. Illinois, 83 U. S. 130.

The exemptions from the duty of registering under the act do not offend against the equal protection of the laws clause of the 14th Amendment: Ohio v. Thomas, 173 U. S. 276; Smith v. Alabama, 124 U. S. 465; McCall v. California, 136 U. S. 391.

The act does not violate the due process clause of the 14th Amendment: Dent v. West Virginia, 129 U. S. 114; Com. v. Petry, 81 Pa. Superior Ct. 27; Com. v. Vrooman, 164 Pa. 306.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, January 24, 1927:

The Engineers Licensing Act of May 25, 1921, P. L. 1131, was declared unconstitutional by the Court of Quarter Sessions of Monroe County in Com. v. Stevenson, 4 Pa. D. & C. 321, and by the Court of Common Pleas of Lackawanna County in Stevenson v. State Board, 28 Lackawanna Jurist 1. These decisions were unappealed from, and confusion as to the state of the law resulted; following the procedure approved by this court in Com. v. Warren, 217 Pa. 163, the attorney general invoked the exercise of our original jurisdiction, to which, under the circumstances, we consented, and the case is now before us on a writ of quo warranto.

The statute in question is entitled: "An act to regulate the practice of the profession of engineering and of land surveying; creating a state board for the registration of professional engineers and land surveyors; defining its powers and duties; imposing certain duties upon the Commonwealth and political subdivisions thereof in connection with public work; and providing penalties."

This statute is attacked on many grounds, only some of which, however, require consideration. First, it is contended that the act legislates upon three different subjects, (1) the profession of engineering, (2) land surveying, and (3) the lawfulness of work and contracts connected with public improvements,—thus violating section 3 of article III of the State Constitution. But before discussing this contention, we shall dispose of certain other contraverted points, one of which rules the case.

Treating the act for the moment as covering a single subject, the regulation of the practice of the profession of engineering, we cannot say, as plaintiff would have us do, that it goes beyond the police power of the State. In Com. v. Vrooman, 164 Pa. 306, 315, 316, 321, where the constitutionality of an act prohibiting insurance con-

tracts by all persons, natural or artificial, except duly
chartered corporations, was sustained as within the po-
lice power, we said: "However difficult it may be to
render a satisfactory definition of the police power, there
seems to be no doubt that it does extend to the protec-
tion of the lives, health and property of the citizens";
and that an act passed to "regulate," for the public wel-
fare, "the inherent and inalienable right of the citizen to
acquire, possess and protect property," was a proper ex-
ercise of the police power.  We sustained the act there
in question on the express ground that "The business of
insurance against loss by fire is, by reason of its magni-
tude, its importance to property owners, and the nature
of the business, a proper subject for the exercise of the
police power."  Many other authorities could be added
to show that, in order to advance the public welfare, the
protection of property owners, against both fraud and
incompetency on the part of those with whom they must
deal, is a consideration to bring a statute within the po-
lice power of the State, if those whose calling the act
regulates are obviously important in number and the
subject involved is one which calls for integrity, skill or
competence; but in this connection it is necessary to
mention only two cases.  See, first, Engel v. O'Malley,
219 U. S. 128, 137, where a New York statute providing
for the licensing of bankers was sustained by the federal
Supreme Court, Mr. Justice HOLMES saying: "The power
of the State to make the pursuit of a calling depend upon
obtaining a license is well established, where safety
seems to require it."  Next, Dent v. West Virginia, 129
U. S. 114, 122, 131, where Mr. Justice FIELD said: "The
power of the State to provide for the general welfare of
its people, authorizes it to prescribe all such regulations
as in its judgment will secure or tend to secure them
against the consequences of ignorance and incapacity as
well as of deception and fraud."

Our research has disclosed several cases where, to
guard and secure the public welfare the protection of

property is specifically mentioned as a proper object of the police power. For example: in Beer Company v. Massachusetts, 97 U. S. 25, 33, Mr. Justice BRADLEY says, "Whatever differences of opinion may exist as to the extent and boundaries of the police power,...... there seems to be no doubt that it does extend to the protection of the lives, health *and property* of the citizens"; in Jacobson v. Massachusetts, 197 U. S. 11, 28, Mr. Justice HARLAN states, "In Hannibal & St. John R. Co. v. Husen, 95 U. S. 465, 471-473, 24 L. ed. 527, 530, 531, this court recognized the right of a state to pass ......laws for the protection of life, liberty, health, or *property within its limits."* Bouvier's Law Dictionary, vol. 3, p. 2615, defines the police power as "The power to govern men and things extending to the protection of the lives, limbs, health, comfort and quiet of all persons and *the protection of all property within the State."*

Of course, under what circumstances the safety and welfare of the community require the protection afforded by a professional registration act is primarily for the legislature to decide, and when that body concludes that engineers,—who have to do with the construction of our great bridges, reservoirs and buildings, together with other structures which touch the daily life of all the people,—must have their qualifications certified by the State, we can hardly say that such an act is prima facie an abuse of the police power; for a mistake made by an engineer in figuring the strain and stress capacity of the various members that enter into many latter-day constructions might lead to such a loss of life as would amount to a public calamity, or, in the field of electrical engineering, the wrong location of wires and machinery might result in untold injuries, and, again, the unskilled performance of the duties of a mining engineer might not only lead to the loss of human life, but also to much strife between adjoining owners and to litigation in the courts. But, continuing to treat the act now before us as providing only for the licensing of pro-

fessional engineers, and admitting that this is within the police power of the State, does the statute violate the Constitution in any material respect? This brings us to the ruling question in the case.

The act provides that "any person practicing or offering to practice the profession of engineering" shall be required to register under its provisions, and that, "it shall be unlawful," after a named date, "for any person to practice or to offer to practice the profession of engineering," unless such person "has been duly registered ......or exempted" under the act. This provision that it shall be unlawful either to practice or offer to practice as an engineer without being duly licensed or exempted would, of course, subject to attack the validity of all contracts made in the course of such prohibited conduct, and the exemption of certain groups of persons from the necessity of registration is but a method of classification. That is to say, on one hand we have the general group,—including all persons except those exempted,—who must register under the act or be penalized for unlawfully pursuing the profession of engineering; and on the other hand we have several groups of persons who may practice that profession in our State without registering under the statute, and whose professional acts and contracts are all valid so long as they keep within the general law. Does this classification unwarrantably interfere with the equality of opportunity of "acquiring, possessing and protecting property" (section 1, article I, of our State Constitution), by pursuing one's business or profession, guaranteed by the Constitution? Wherever such grouping as here involved is, on any substantial basis, a reasonable one, it is sustainable; but where the grouping presents an unreasonable classification, the question arises as to its effect on the validity of the act in which it is found.

Section 24 of the present statute provides, "The following persons shall be exempted from registration: ...... (a) a person not a resident of and having no es-

tablished place of business in this Commonwealth, offering to practice therein as a professional engineer." This, as may be seen, has the effect of permitting nonresident, unregistered engineers to tender their services, and, necessarily, to make valid contracts for pursuing their profession in this State, while our own engineers must register in order lawfully so to act. As far as Pennsylvania engineers are concerned, such a classification may be, as argued by defendant, no breach of the federal Constitutional provision which guarantees to the citizens of each state the privileges and immunities of citizens of the several states; but is it not a violation of the guarantee of equality of opportunity contained in the Constitution of Pennsylvania? While a temporary exemption from necessity of registration may be reasonable, such as granted to outside engineers actually practicing in Pennsylvania by paragraphs (b) and (c) of section 24 of the act, yet there is a grave question as to the legality of the permanent exemption granted by paragraph (a). It may be that paragraph (d), exempting employees of regularly registered engineers, is reasonable, on the theory that such employees are merely assisting duly registered practitioners. Likewise, the exemption in paragraph (e), of officers and employees of the federal government, may be justified, though not on the ground urged by defendants, that the State would have no right to interfere with such engineers while engaged in the business of the federal government; for the words of this exemption comprehend more than mere services for the United States,—they authorize such officers and employees "to engage in the practice of engineering," and this general language may well be construed as meaning practice beyond their engagement with the federal government. Perhaps, however, this classification would be warrantable on the theory that the legislature might properly assume the federal government would employ none but qualified engineers. The same theory might sustain exemptions in favor of employees of the Commonwealth, contained

in paragraph (f); but for the final exemption, contained in paragraph (g), we can think of no conceivable justification.

The exemption in question reads thus: "Officers and employees of a corporation engaged in interstate commerce as defined in the Act of Congress entitled 'An act to regulate commerce,' approved February 4, 1887." What reasonable grounds can there be for permitting officers and employees of corporations engaged in interstate commerce to practice the profession of engineering in Pennsylvania without registration, while requiring all officers and engineers of corporations not engaged in interstate commerce to be registered? It will be observed that this does not say that these officers and engineers are exempt merely while engaged in interstate commerce work; on the contrary, they are wholly exempt from registration, and may freely practice the profession of engineering in our State. Moreover, when we come to examine the Act of Congress referred to in the exemption, we find that it does not cover all corporations engaged in interstate commerce, but only certain classes of them. Thus, in order to ascertain what the law of Pennsylvania is, we should be obliged to go to an act of Congress and read it into our own statute. True, in Com. v. Alderman, 275 Pa. 483, we sustained another Pennsylvania act which required such a course. That, however, was under peculiar circumstances explained in our opinion, and the decision must be so confined. The exemption in hand is of doubtful validity on the ground last suggested, and, aside from that, it clearly makes an unwarranted and unjustifiable classification; this last conclusion leads to the question of the exemption's effect upon the validity of the statute as a whole. In other words, with this exemption stricken out, may the remainder of the act still be upheld? This is the point referred to at an earlier stage of our opinion as "the ruling question in the case."

In considering the problem just put, it must be kept in mind that the present act has no provision such as is contained in the act passed upon in Bagley v. Cameron, 282 Pa. 84, 88, which stated explicitly that, in the event of any particular provision of the statute being unconstitutional, "the remaining provisions would have been enacted notwithstanding such judicial determination," and were to stand just as though the part declared invalid had not been enacted. Even without such a provision, however, the law is that, wherever part of an act found to be unconstitutional can be severed from the rest of the statute without destroying its entirety of thought, such severance may be made and the act sustained, but where the severance would destroy the unity of thought, the whole act necessarily falls. This rule is expressed in Rothermel v. Meyerle, 136 Pa. 250, 265, as follows: "If the part which is unconstitutional in its operation is independent of, and readily separable from, that which is constitutional, so the latter may stand by itself, as the reasonable and proper expression of the legislative will, it may be sustained as such; but if the part which is void is vital to the whole, or the other provisions are so dependent upon it, and so connected with it, that it may be presumed the legislature would not have passed one without the other, the whole statute is void." See also Booth & Flinn v. Miller, 237 Pa. 297, 309. We cannot presume that the legislature would have passed the present act without the exemption contained in paragraph (g) of section 24, any more than we are warranted in thinking it would have passed the act even though all the numerous exemptions inserted therein had been omitted; hence, we must assume these exemptions to be inseparable expressions of the legislative will, and, as one, at least, of them is unconstitutional, the whole act falls.

In view of the conclusion just reached, we might end our opinion here, without further discussion; we deem it wise, however, to return to the previously-stated con-

tention, (see third paragraph of this opinion) that the act before us contains more than one subject of legislation. Thus far we have considered the act as though it dealt with only a single subject, the profession of engineering; but, both in its title and throughout all of its provisions, this statute is written as treating of at least two subjects, first, "engineering," and next, "land surveying." As the act is drawn, the latter occupation is not treated as a mere subordinate branch of the former. The act constantly refers to "the profession *of* engineering," and usually adds, immediately thereafter, "or *of* land surveying"; and thus, by using the conjunction "or" and repeating the preposition "of," it conveys the idea of two professions. Furthermore, the act repeatedly refers to *"a* professional engineer" and to "a land surveyor," and really treats them as separate subjects of legislation. Section 2 defines the term "professional engineer" in such a way as not to include a land surveyor; then, immediately afterward, it defines "land surveyor." Had the legislature made the definition of engineer broad enough to include a land surveyor, as engaged in a minor branch of engineering,—and this, perhaps, it might have done,—there would have been no necessity for subsequently defining a land surveyor; the fact of the presence of the two definitions indicates in itself that the first of them was not intended to include the second. Finally, when we look at section 17 of the act we find that one fee is charged to register an applicant as a land surveyor and a higher fee to register one *"both as* a professional engineer and as a land surveyor." In short, the act in many ways, only some of which are here pointed out, deliberately treats a land surveyor as separate and distinct from what it calls a "professional engineer," rather than as one following a minor branch of engineering. Thus it apparently sets up two subjects of legislation in one statute, which, of course, is forbidden by our Constitution.

It is no answer to say, as defendants do, that a land surveyor can justifiably be regarded as a minor engineer, for the legislature here designedly chose to treat him otherwise. Again, it is no answer to argue that in several other instances learned professions have been divided into different branches by the legislature, and dealt with in a single bill; for when these instances are examined, it will be found that in each of them the legislature plainly treated a main subject as including minor branches. For example, the Act May 5, 1915, P. L. 248, cited to us by defendants, is entitled, "An act regulating the practice of veterinary medicine, *including* veterinary surgery and veterinary dentistry or any branch thereof," etc.; and throughout this statute all the so-called branches are treated as part of the main subject. The Act of June 3, 1911, P. L. 639, relating to the medical profession, pursues the same course; it sets up a comprehensive definition and legislates accordingly. This latter act particularly provides, however, that certain practitioners, who might otherwise come within its general terms, are excluded therefrom,—for instance, dentists and osteopaths; and they are so treated because each is covered by a separate act relating to that particular profession or school of practice alone. We have construed this medical practitioners act to include, as coming within its general terms, a person practicing neuropathy (see Com. v. Seibert, 262 Pa. 345), although such practitioners could, as well as the osteopaths, have been classified separately, had the legislature seen fit to pursue that course; but, had the law-makers ordained such a separate classification, they could not at the same time have included neuropaths in the general act without making it subject to the same fault as that in the present statute. It is only because the neuropaths were not classified separately that they came within the general medical statute. Of the numerous acts called to our attention regulating businesses and professions, the present statute is the only one which is not drawn in a

comprehensive way, so as to include all practitioners, major and minor, within a common statutory definition; though some of the statutes to which we refer may contain special regulations for designated grades of practitioners. Here the trouble is not that the instant act contains special regulations for "professional engineers" and others for "land surveyors," but that, by the language employed, it deliberately treats,—both in the title and throughout all its provisions,—land surveyors as following an occupation separate and distinct from that of professional engineers, and thus, as we said before, it apparently sets up two subjects of legislation instead of one. While it has seemed wise to mention and discuss the point just made, so that it may be taken into consideration in the drawing of future legislation along the lines of the present act, yet we do not rule the case thereon.

We now come to what plaintiff contends is a third subject contained in the present statute. The title states, inter alia, that it is an act "imposing certain duties upon the Commonwealth and political subdivisions thereof in connection with public work"; and section 29 provides that it shall be "unlawful" for either the Commonwealth or any of its political subdivisions to engage in any construction work involving engineering "unless the plans, specifications and estimates have been approved by, and the construction supervised by, a registered professional engineer." It is a grave question whether this provision can be held to be merely subordinate to the main thought of regulating the practice of engineering, and whether it does not, as contended by plaintiff, constitute a third and separate subject of legislation, namely, the regulation of the lawfulness of work, and, incidentally, of contracts, connected with public improvements. We shall not, however, rule the case on the effect of the presence in the act of section 29, though, for the reason stated at the end of the preceding paragraph of this opinion, it seems proper to call attention to the point in hand. We

rest our decision, declaring the act unconstitutional, on the ground previously explained, that, by the exemption in paragraph (g) of section 24, it creates an unjustifiable classification.

Judgment of ouster is entered against the defendants.