PPG INDUSTRIES, INC., Petitioner

v.

COMMONWEALTH of Pennsylvania, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1995.

Decided Nov. 3, 1995.

Publication Ordered June 18, 1996.

Paul S. Kline, for Petitioner.

Matthew W. Tomalis, for Respondent.

Before PELLEGRINI and KELLEY, JJ., and RODGERS, Senior Judge.

PELLEGRINI, Judge.

PPG Industries, Inc. (PPG) petitions for review the order of the Board of Finance and Revenue (Board) upholding the resettlement by the Commonwealth of Pennsylvania, Department of Revenue (Department), of PPG's capital stock tax for the year 1983.[1]

---

1. The parties were unable to agree to a stipulation or partial stipulation of facts. Where the parties cannot agree to a stipulation of facts, this court must resolve the issues of fact. Pa. R.A.P.

PPG is a Pennsylvania corporation with its corporate headquarters in Pittsburgh. It is in the business of manufacturing or fabricating glass, fiberglass, chlor-alkali chemicals, coatings and paint. During 1983, the tax year at issue, the corporate headquarters were moved from Gateway Center to PPG Place, both of which are office buildings in downtown Pittsburgh. The corporate activities, at either Gateway Center or PPG Place, included the administration of manufacturing facilities located both within the Commonwealth and outside of the Commonwealth. These corporate operations also included some activities that are not exempt from corporate stock tax under what is known as the "manufacturing exemption".

For its capital stock taxes for the year 1983, PPG reported the value of its capital stock to be $1.3 billion. It reported the taxable value of its capital stock as $36,276,500, with a resulting tax of $362,765. The taxable value was found by multiplying the value of the stock by an apportionment factor; PPG used 2.7905%, which it calculated was the average of the proportion of Pennsylvania payroll, property and sales to total payroll, property and sales. Auditors for the Department increased the apportionment factor[2] to 5.1832% by determining that a greater portion of PPG's corporate headquarters payroll and property were taxable. The resulting capital stock tax assessed by the auditors was $777,480. (PPG Exhibit 2, Settlement Computation). At resettlement, the auditors determined that the apportionment factor was 4.7750%, resulting in a taxable value of $71,625,000 and a tax of $716,250. (PPG Exhibit 3, Resettlement Computation). The Department accepted the auditors' changes at both settlement and resettlement. PPG appealed the Department's resettlement of the capital stock taxes to the Board. The Board agreed with the Department's resettlement and PPG then filed this appeal.

## I.

PPG contends that under Section 602(a) of the Tax Reform Code of 1971 (Tax Reform Code),[3] the Department erred in exempting from taxation only that portion of the corporate headquarters payroll and property that was deemed by the Department to be devoted to in-state "manufacturing, processing, research or development" (manufacturing). Disagreeing not only with PPG's interpretation of Section 602(a), the Department contends that Section 602(a) doesn't apply to PPG, but rather 602(b)(1) of the Tax Reform Code, 72 P.S. § 7602(b)(1)[4], is appropriate.

1571(f). Although this court hears petitions for review from decisions of the Board of Finance and Revenue in our appellate jurisdiction, we function essentially as a trial court. *PICPA Foundation v. Commonwealth*, 143 Pa.Cmwlth. 291, 598 A.2d 1078, 1080 n. 6 (1991), *affirmed*, 535 Pa. 67, 634 A.2d 187 (1993). *See also Norris v. Commonwealth*, 155 Pa.Cmwlth. 423, 625 A.2d 179, 182 (1993). Based on evidence presented at a hearing before this court on April 7, 1995, as well as the pleadings, we find the facts as stated in the body of the opinion.

2. After an appraisal, the Department also increased the value of the capital stock to $1.5 billion. That change is not at issue here.

3. The Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7602(a). Section 602(a) of the Tax Reform Code imposes a capital stock tax on domestic entities of ten mills upon each dollar of the capital stock value:

[E]xcept for the imposition of the seventy-five dollar ($75) minimum tax, the provisions of this section shall not apply to the taxation of the capital stock of entities organized for man-

ufacturing, processing, research or development purposes, which is invested in and actually and exclusively employed in carrying on manufacturing, processing, research or development within the State, ... but every entity organized for the purpose of manufacturing, processing, research or development ... shall pay the State tax ... upon such proportion of its capital stock, if any, as may be invested in any property or business not strictly incident or appurtenant to the manufacturing, processing, research or development business, ...

PPG contends that the language in Section 602(a) allows the manufacturing exemption for the company's overall manufacturing rather than to just manufacturing within the Commonwealth. PPG apparently believes that the phrase in Section 602(a), *supra*, beginning with "which is" refers to entities, so that as long as it is carrying on some manufacturing within the state, any capital stock invested in property or business of manufacturing anywhere is exempted from taxation.

4. The computation method set up in Section 602(b)(1) provides that the tax is ten mills upon a

A general discussion of the statute is helpful to determine the applicable section. Section 602 of the Tax Reform Code imposes a capital stock tax on domestic entities [5] and a franchise tax on the capital stock of foreign entities at the rate of ten mills (for the year 1983). The taxes have been described as follows:

> [B]oth a corporation incorporated under the laws of this Commonwealth (domestic corporation) and a corporation elsewhere (foreign corporation) doing business in Pennsylvania are subject to an annual tax based on the value of the corporation's capital stock. In the case of a domestic corporation, the tax is called a capital stock tax and is justified on the basic constitutional premise that a corporation's *property* may be taxed in the state of its creation. A foreign corporation, on the other hand, pays a franchise tax. As a state cannot constitutionally tax property and assets located outside the state, the franchise tax is a *business privilege tax* and not a property tax. Commonwealth v. Columbia Gas & Electric, 336 Pa. 209, 8 A.2d 404 (1939).

*Commonwealth v. After Six, Inc.,* 489 Pa. 69, 74, 413 A.2d 1017, 1019 (1980) (Footnotes omitted, emphasis in original).

 The tax on both domestic and foreign entities is subject to a "manufacturing exemption" but the Tax Reform Code sets up different computations for each type of entity. Both domestic entities and foreign entities may elect to compute and pay its tax under the opposite computational method.[6] A domestic entity electing to apply the computational method set forth for foreign entities is placed on the same footing as a foreign corporation paying its franchise tax. *After Six.*

 In this case, PPG submitted a "Pennsylvania Corporate Tax Report" for 1983 that stated apportionment percentages calculated by using the three-factor apportionment method stated in Section 602(b)(1).[7] (PPG

---

taxable value of an entity's capital stock. The taxable value is determined by first calculating the capital stock value in the manner set forth in Section 601(a). Secondly:

> The taxable value shall then be determined by employing the relevant apportionment factors set forth in Article IV [Section 401(3)2.(a) of the Tax Reform Code, 72 P.S. § 7410(3)2.(a) ]: Provided, That the manufacturing, processing, research and development exemptions contained under section 602(a) shall also apply to foreign corporations and in determining the relevant apportionment factors the numerator of the property, payroll or sales factors shall not include any property, payroll or sales attributable to manufacturing, processing, research or development activities in the Commonwealth.

The applicable parts of the current sections are substantially the same as those made effective to PPG's 1983 taxes through the Act of Dec. 23, 1983, P.L. 370, No. 90, quoted *supra.*

**5.** A domestic entity, as defined in Section 601(a) of the *Tax Reform Code,* 72 P.S. § 7601(a), includes a corporation that was incorporated under the laws of this Commonwealth, such as PPG.

**6.** In 1967, the Legislature amended the statute to give domestic corporations the option to compute the capital stock tax by using the franchise tax formula. *After Six,* 413 A.2d at 1021. The purpose of the amendment was to benefit domestic corporations which had most of their assets in Pennsylvania, yet conducted a significant portion of their business out of state; using the franchise tax formula would reduce their tax liability. *Id.* In *Gilbert Associates, Inc. v. Commonwealth,* 498 Pa. 514, 447 A.2d 944 (1982), the Supreme Court found that giving domestic entities the choice to use the three-factor apportionment method but not giving foreign entities the choice to use the single-factor method was unconstitutional, and the Tax Reform Code was then amended to allow foreign entities to elect its method. The use of the three-factor apportionment method [or the single-factor by foreign entities] is a legislative grant by which a taxpayer can reduce its liability and, because the use of the method is in the nature of an exemption or deduction, it must be strictly construed. *Commonwealth v. Greenville Steel Car Co.,* 469 Pa. 444, 366 A.2d 569 (1976).

**7.** The three-factor apportionment method consists essentially of the average of three ratios: tangible property in the Commonwealth to tangible property everywhere; payroll in the Commonwealth to payroll everywhere; and sales in the Commonwealth to sales everywhere. *See* Section 401(3)2.(a) of the Tax Reform Code, 72 P.S. § 7401(3)2.(a). Pennsylvania property, pay-

Exhibit 2). Based on the submission of the report utilizing apportionment percentages, PPG elected, through the provision in Section 602(a), to "compute and pay" its tax under the franchise tax for foreign entities set forth in Section 602(b)(1). Having elected to compute its tax under the three-factor apportionment method, it is treated as if it were a foreign entity subject to the franchise tax under Section 602(b)(1). *After Six.* PPG suggests that Section 602(b)(1) itself refers back to Section 602(a) making the language in Section 602(a) applicable. Although Section 602(b)(1) states that the Section 602(a) exemption shall apply, even assuming that Section 602(a) stated a different exemption, this is only a general reference to the availability of the exemption that is followed by an express statement of how the exemption is to be computed in the three-factor apportionment method. This more specific statement of how to compute the manufacturing exemption in the three-factor apportionment method in Section 602(b)(1) is applicable to PPG because it elected to use that method.

∎ Having determined that Section 602(b)(1) is applicable, the Department contends that the plain language of the statute is that the manufacturing exemption only applies to in-state manufacturing. We agree. In the three-factor apportionment, the manufacturing exemption is computed by eliminating from the numerator of the three factors:

> [A]ny property, payroll or sales attributable to manufacturing, processing, research or development activities in the Commonwealth.

72 P.S. § 7602(b)(1) (emphasis added). The plain language of the section is controlling and states that only manufacturing in the Commonwealth is exempted.[8]

## II.

∎ By treating headquarters payroll and property attributable to out-of-state manufacturing differently than that attributable to in-state manufacturing, PPG contends that the Department's application of the manufacturing exemption violated the Com-

---

roll and sales attributable to manufacturing are excluded from the numerators of the fractions.

The three-factor apportionment method can be expressed as:

$$\text{CAPITAL STOCK VALUE} \times \text{Apportionment factor} = \text{TAXABLE VALUE}$$

The Apportionment factor is determined by first calculating:

$$\frac{\{\text{property in state—exempt property}\}}{\{\text{total property}\}} = A$$

$$\frac{\{\text{payroll in state—exempt payroll}\}}{\{\text{total payroll}\}} = B$$

$$\frac{\{\text{sales in state—exempt sales}\}}{\{\text{total sales}\}} = C$$

$$\text{Then,} \quad \text{Apportionment factor} = \frac{A + B + C}{\text{three}}$$

Where the corporate headquarters are located in the Commonwealth, the property and payroll of the headquarters attributable to Pennsylvania manufacturing is part of the exemption through the application of a ratio called the "headquarters subfactor" to the total headquarters property and payroll. At Resettlement, the auditors determined a fair headquarters subfactor was 22.1871% exempt calculated as the ratio of Pennsylvania payroll less headquarters payroll over payroll everywhere less headquarters payroll. This ratio was intended to represent the proportion of the headquarters that is devoted to Pennsylvania manufacturing.

8. As to PPG's contention that the language in Section 602(a), if applicable, would allow the

manufacturing exemption to the company's overall manufacturing rather than to just manufacturing within the Commonwealth, the Department contends that the "which is" phrase relates to capital stock, therefore requiring that only capital stock or assets invested in property or business of manufacturing within the Commonwealth is exempted. Because we have determined that subsection b is applicable to PPG due to their election, we need not decide the proper interpretation of Section 602(a) of the Tax Reform Code. However, we note that prior case law has determined that the capital stock tax and franchise tax are meant to be and are equivalent, and that if they are not equivalent between domestic and foreign entities, a constitutional problem is raised. *Gilbert Associates.*

merce Clause [9] and the Equal Protection Clause [10] of the U.S. Constitution and the Uniformity Clause of the Pennsylvania Constitution.[11] The part of the headquarters payroll and property considered exempt was based on the subfactor of Pennsylvania payroll less headquarters payroll over total payroll less headquarters payroll. (PPG Exhibit 3, Resettlement). PPG argues that a "state-line-blind" calculation, which would extend the exemption to that portion of PPG's corporate headquarters payroll and property devoted to PPG's overall manufacturing,[12] is constitutionally required.[13]

## A.

■ As to the Commerce Clause, PPG argues that the manufacturing exemption violates the constitution because it has a discriminatory effect on interstate commerce. PPG specifically argues that there is a discriminatory effect against multi-state corporations with a low proportion of manufacturing within the Commonwealth, and that as a result, PPG is placed at a direct commercial disadvantage when compared to other companies with their corporate headquarters in Pennsylvania but with proportionally greater intrastate manufacturing. The Supreme Court has established a four-pronged test to determine whether a state tax violates the

Commerce Clause. *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977). A state tax is held to be constitutionally valid under the *Complete Auto* test if the tax: (1) is applied to an activity having a substantial nexus with the taxing state, (2) is fairly apportioned, (3) does not discriminate against interstate commerce, and (4) is fairly related to the services provided by the state. PPG does not argue that the manufacturing exemption of the capital stock tax is unconstitutional because is lacks a substantial nexus, is not fairly apportioned or is not fairly related to services provided by the state.

PPG's only argument is that the manufacturing exemption has the discriminatory effect of treating other corporations with their headquarters in Pennsylvania, and a greater proportion of manufacturing in Pennsylvania more favorably by exempting more of the corporate headquarters. That, it contends, has an effect similar to the tax credit found to be unconstitutional in the Supreme Court's decision in *Westinghouse Electric Corp. v. Tully*, 466 U.S. 388, 403, 104 S.Ct. 1856, 1865, 80 L.Ed.2d 388 (1984), where it held that under the Commerce Clause, states cannot impose a tax which discriminates against interstate commerce by providing a direct commercial advantage to local business. (citing *Boston Stock Exchange v. State Tax Commission*, 429 U.S. 318, 329, 97 S.Ct. 599, 606, 50 L.Ed.2d 514 (1977)).[14] However, *Westing-*

9. Article I, Section 8, Clause 3 of the United States Constitution.

10. United States Constitution Amendment XIV, Section 1.

11. Article VIII, Section 1 of the Constitution of the Commonwealth of Pennsylvania.

12. Under PPG's argument, the headquarters subfactor would be total sales of goods manufactured everywhere over gross income, which would allow 86.9894% of the corporate headquarters payroll and property to be considered exempt and result in a 1983 capital stock tax of $317,535. (PPG's Proposed Findings of Fact, ¶¶ 39–40).

13. Legislation that imposes a tax is presumed to be constitutional, and the taxpayer challenging that legislation bears the burden of proving that it clearly, palpably and plainly violates the constitution. *Leonard v. Thornburgh*, 507 Pa. 317, 489 A.2d 1349 (1985); *White v. Commonwealth, Medical Professional Liability Catastrophe Loss Fund*, 131 Pa.Cmwlth. 567, 571 A.2d 9, 10 (1990). Any doubts regarding the constitutional-

ity of tax legislation should be resolved in favor of upholding its constitutionality. *White*, 571 A.2d at 10. Moreover, the taxing authority possesses wide discretion regarding matters of taxation, with this discretion being limited by the requirements of the Equal Protection and Uniformity Clauses of the United States and Pennsylvania Constitutions. *Leventhal v. City of Philadelphia*, 518 Pa. 233, 542 A.2d 1328 (1988).

14. In *Westinghouse*, the Supreme Court struck down a so-called "franchise tax" in New York which was based on the income of a business and that allowed a tax credit to certain income of Domestic International Sales Corporations (DISC), exporting companies, owned by the parent company, Westinghouse, a Pennsylvania corporation. The Supreme Court stated:

It is this second adjustment, made only to the credit and not to the base taxable income figure, that has the effect of treating differently parent corporations that are similarly situated in all respects except for the percentage of their DISC's shipping activities conducted from New York. This adjustment has the effect of allowing a parent a greater tax credit on its

*house* is inapplicable to this case because in that case, domestic companies were given an advantage against out-of-state companies in proportion to the exports the companies moved through the state.

There is ño discriminatory effect under the *Complete Auto* test in this case, because there is no incidence of interstate commerce that is burdened or discrimination by the apportionment method used in this case. PPG is a Pennsylvania corporation subject to a property tax determined on the basis of capital stock apportioned to the state. *See After Six.* Once the capital stock is apportioned to only that within Pennsylvania, then a manufacturing exemption applies to exempt property within the state that is related to manufacturing within the state. Both the tax and the exemption is based on in-state property and does not affect out-of-state property. The fact that a proportion of the corporate headquarters is taxed is a result of locating the corporate headquarters within the Commonwealth, not on locating some or most of the manufacturing out-of-state. Regardless of the location of the manufacturing, nothing moving in interstate commerce is measured or affected by the exemption.

■ Moreover, while the exemption encourages manufacturing within the Commonwealth, it does so based on a direct relationship to manufacturing within the state, not to any interstate transaction or incidence. As long as a state does not tax a transaction or incidence, or if it does tax it not more heavily when it crosses state lines, fair encouragement of in-state business through taxing policies is not unconstitutional. *Armco, Inc. v. Hardesty*, 467 U.S. 638, 645–46, 104 S.Ct. 2620, 2624–25, 81 L.Ed.2d 540 (1984). *See also New Energy Company of Indiana v. Limbach*, 486 U.S. 269, 273–74, 108 S.Ct. 1803, 1807, 100 L.Ed.2d 302 (1988) ("[T]he Commerce Clause prohibits economic protec-

tionism—that is, regulatory measures designed to benefit in-state economic interests by [unduly] burdening out-of-state competitors"). If all encouragement of in-state business was unconstitutional, then what would be at issue here is not whether the in-state or out-of-state proportion burdens interstate commerce, but whether the manufacturing exemption *in toto* burdens interstate commerce and is unconstitutional. No interstate commerce is affected in this case, nor are any commercial transactions eÏven measured in calculating the manufacturing exemption. Providing an exemption for some property that is entirely taxable based on other property within the state does not cross state lines and does not discriminate against out-of-state competitors or out-of-state operations.

### B.

■ As to the Equal Protection Clause and Uniformity Clause, PPG contends that the manufacturing exemption is unconstitutional because there is discrimination between corporations with their headquarters in Pennsylvania and substantial out-of-state manufacturing, and corporations with their headquarters in Pennsylvania and no substantial out-of-state manufacturing. Both the federal Equal Protection Clause and the Uniformity Clause of the Pennsylvania Constitution, as both are applied to taxing statutes, mandate that classification in the taxing scheme have a rational basis.[15] *Leventhal.* A classification for tax purposes is valid when it "is based upon some legitimate distinction between the classes that provides a non-arbitrary and 'reasonable and just' basis for the different treatment." *Leonard*, 507 Pa. at 321, 489 A.2d at 1350. However, where there exists no legitimate distinction between the classes and the tax scheme imposes sub-

---

accumulated DISC income as its subsidiary DISC moves a greater percentage of its shipping activities into the State of New York. Conversely, the adjustment decreases the tax credit allowed to the parent for a given amount of its DISC's shipping activity conducted from New York as the DISC increases its shipping activities in other States. Thus, not only does the New York tax scheme "provide a positive incentive for increased business activity in New York State," but also it penalizes increas-

es in the DISC's shipping activities in other States.
*Id.* at 400–401, 104 S.Ct. at 1863 (footnote omitted, citation to record omitted).

15. So far as the reasonableness of classifications in taxing schemes is concerned, the Uniformity Clause and Equal Protection Clause stand in *pari materia. Commonwealth v. Life Assurance Company of Pennsylvania*, 419 Pa. 370, 214 A.2d 209 (1965).

stantially unequal tax burdens upon persons otherwise similarly situated, the tax is unconstitutional. *Leventhal,* 518 Pa. at 239, 542 A.2d at 1331; *Commonwealth v. Staley,* 476 Pa. 171, 180, 381 A.2d 1280, 1284 (1978).

■■■■ The Department argues that PPG did not allege an unreasonable "classification" in the taxing scheme and that the purpose of the manufacturing exemption is legitimate. First, the only classification asserted by PPG is one between Pennsylvania corporations, with their headquarters in the state, based on whether they perform a substantial amount of manufacturing outside of the state. Neither the capital stock tax nor the manufacturing exemption make such a classification. All corporations with manufacturing in the state are entitled to an exemption based on that manufacturing. It is only that manufacturing that is determinative so that corporate headquarters that is not related to in-state manufacturing is exempt and otherwise it is taxed regardless of how much manufacturing is done anywhere else. Moreover, the purpose of the exemption is to encourage manufacturing in the state, not to encourage the location of the corporate headquarters in the state, as PPG seems to believe.

Accordingly, because the Department applied the Tax Reform Code correctly to PPG and because PPG has not met its burden to prove the manufacturing exemption is unconstitutional, the decision of the Board is affirmed.

### ORDER

AND NOW, this *3rd* day of *November,* 1995, the order of the Board of Finance and Revenue, dated October 2, 1987, No. R–10,-904, is affirmed.

Unless exceptions are filed hereto within 30 days, in accord with the provisions of Pa. R.A.P. 1571(i), judgment shall be entered as set forth by the Board of Finance and Revenue on praecipe of either party.

ROGERS, Senior Judge, files dissenting opinion.

RODGERS, Senior Judge, dissenting.

While I find no merit in the constitutional arguments advanced by the petitioner, PPG Industries, Inc., (PPG), I respectfully dissent from the statutory interpretation by the court of the capital stock tax manufacturing exemption applicable to PPG's corporate headquarters in Pittsburgh.

It is not disputed that the administration of PPG's manufacturing and fabrication facilities are centralized at its Pittsburgh headquarters, nor is it disputed that about 86% of its income is received from the sale of products it manufactures. Yet the Pennsylvania Department of Revenue finds that only about 22% of the capital invested by PPG in its corporate headquarters is invested in the manufacturing business in Pennsylvania, because the balance is not invested in Pennsylvania, but in other states and countries. But the headquarters' property is occupied in Pittsburgh, the headquarters' payroll is paid in Pittsburgh and its headquarters' property and personnel are engaged in the manufacturing business in Pittsburgh, even though they may also be helping to administer manufacturing facilities and plants in other states and countries.

The statute in question reads as follows:

Provided, That ... the provisions of this section shall not apply to the taxation of the capital stock of corporations ... organized for manufacturing, processing, research or development purposes, which is invested in and actually and exclusively employed in carrying on *manufacturing, processing, research or development within the State,* ... but every corporation ... organized for the purpose of manufacturing, processing, research or development ... shall pay the State tax ... upon such proportion of its capital stock, if any, as may be invested in any property or business not strictly *incident or appurtenant to the manufacturing, processing, research or development business,* in addition to the local taxes assessed upon its property in the district where located, it being the object of this proviso to relieve from State taxation ... only so much of the capital stock as is invested purely in the manufacturing, processing, research or development *plant and business.*

Section 602(a) of the Tax Reform Code of 1971 (Code), Act of March 4, 1971, P.L. 6, *as*

*amended,* 72 P.S. § 7602(a) (language of the Code quoted is the pertinent portion in effect for the 1983 tax year) (emphasis added).

I find nothing in the statute or the law that requires the exemption be limited only to headquarters' property and personnel engaged in administering other manufacturing facilities and plants in Pennsylvania. Indeed, the exemption was created to establish a favorable climate in Pennsylvania for manufacturers and thus encourage the development of industry. *Commonwealth v. Deitch Company,* 449 Pa. 88, 295 A.2d 834 (1972). Such legislative purpose is better served by recognizing that PPG is almost totally engaged in manufacturing and that most of its headquarters' personnel and property are in the manufacturing business in the Commonwealth of Pennsylvania.