**PPG INDUSTRIES, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued May 15, 1996.

Decided June 19, 1996.

Christopher Zettlemoyer, for Petitioner.

Matthew W. Tomalis, for Respondent.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

PELLEGRINI, Judge.

Before this court are exceptions filed by PPG Industries, Inc. (PPG) pursuant to Pa. R.A.P. 1571(i) to a panel decision of this court filed November 3, 1995, affirming the order of the Board of Finance and Revenue (Board). In that case, PPG sought review of the Board's order resettling its capital stock tax for the year 1983 by applying the manufacturing exemption for capital stock to only that portion of PPG's corporate headquarters which is related to manufacturing within the state.

PPG is a Pennsylvania corporation with its corporate headquarters in Pittsburgh. It is in the business of manufacturing or fabricating glass, fiberglass, chlor-alkali chemicals, coatings and paint. During 1983, the tax year at issue, activities at the corporate headquarters included the administration of manufacturing facilities located both within the Commonwealth and outside of the Commonwealth, and other operations not related to manufacturing.

For its 1983 capital stock taxes, PPG reported a tax of $362,765, based on the taxable value of its capital stock which is found by

multiplying the value of the stock by an apportionment factor, that is, the average of the proportion of Pennsylvania payroll, property and sales to total payroll, property and sales. Auditors for the Commonwealth of Pennsylvania, Department of Revenue (Department) determined that a greater portion of PPG's corporate headquarters payroll and property were taxable. At resettlement, the resulting capital stock tax assessed by the Department was $716,250. PPG appealed the Department's resettlement of the capital stock taxes to the Board. The Board agreed with the Department's resettlement and PPG then filed its appeal to this court.

PPG contended that under Section 602(a) of the Tax Reform Code of 1971 (Tax Reform Code),[1] the Department erred in exempting from taxation only that portion of the corporate headquarters payroll and property that was deemed by the Department to be devoted to in-state "manufacturing, processing, research or development" (manufacturing). Disagreeing not only with PPG's interpretation of Section 602(a), the Department contended that Section 602(a) doesn't even apply to PPG, but rather Section 602(b)(1) of the Tax Reform Code, 72 P.S. § 7602(b)(1),[2] is appropriate. PPG also contended that the Department's application of the manufacturing exemption violated the Commerce Clause[3] and the Equal Protection Clause[4] of the United States Constitution and the Uniformity Clause of the Pennsylvania Constitution.[5]

This court, in its previous panel decision, held that the Department properly limited PPG's manufacturing exemption to that portion of the corporate headquarters that is related to manufacturing within the state. Because PPG submitted its tax report utilizing the three-factor apportionment method of calculating capital stock tax, stated in Section 602(b)(1) of the Tax Reform Code, 72 P.S. § 7602(b)(1), we held that it elected to be treated as if it were a foreign entity subject to all of the provisions of the franchise tax under Section 602(b)(1). *See Commonwealth v. After Six, Inc.*, 489 Pa. 69, 413 A.2d 1017 (1980). We agreed with the Department that the plain language of Section 602(b)(1) states that the manufacturing exemption only applies to in-state manufacturing because it states that in the three-factor apportionment, the manufacturing exemption is computed by eliminating from the numerator of the three factors:

> [A]ny property, payroll or sales attributable to manufacturing, processing, re-

1. The Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7602(a). Section 602(a) of the Tax Reform Code imposes a capital stock tax on domestic entities of ten mills upon each dollar of the capital stock value:

> [E]xcept for the imposition of the seventy-five dollar ($75) minimum tax, the provisions of this section shall not apply to the taxation of the capital stock of entities organized for manufacturing, processing, research or development purposes, which is invested in and actually and exclusively employed in carrying on manufacturing, processing, research or development within the State, ... but every entity organized for the purpose of manufacturing, processing, research or development ... shall pay the State tax ... upon such proportion of its capital stock, if any, as may be invested in any property or business not strictly incident or appurtenant to the manufacturing, processing, research or development business, ...

2. The computation method set up in Section 602(b)(1) provides that the tax is ten mills upon a taxable value of an entity's capital stock. The taxable value is determined by first calculating the capital stock value in the manner set forth in Section 601(a). Secondly:

> The taxable value shall then be determined by employing the relevant apportionment factors set forth in Article IV [Section 401(3)2.(a) of the Tax Reform Code, 72 P.S. § 7410(3)2.(a) ]: Provided, That the manufacturing, processing, research and development exemptions contained under section 602(a) shall also apply to foreign corporations and in determining the relevant apportionment factors the numerator of the property, payroll or sales factors shall not include any property, payroll or sales attributable to manufacturing, processing, research or development activities in the Commonwealth.

> The language of the current sections are substantially the same as the language, quoted above, made effective to PPG's 1983 taxes through the Act of Dec. 23, 1983, P.L. 370, No. 90.

3. Article I, Section 8, Clause 3 of the United States Constitution.

4. United States Constitution Amendment XIV, Section 1.

5. Article VIII, Section 1 of the Constitution of the Commonwealth of Pennsylvania.

search or development activities *in the Commonwealth.*

72 P.S. § 7602(b)(1) (emphasis added). Accordingly, we concluded that only manufacturing in the Commonwealth or that portion of the corporate headquarters attributable to manufacturing in the Commonwealth is properly exempted.

This court also held previously that the Department's application of the manufacturing exemption did not violate either the Commerce Clause, the Equal Protection Clause or the Pennsylvania Uniformity Clause. As to the Commerce Clause, PPG's argument was that the manufacturing exemption has the discriminatory effect of treating other corporations with their headquarters in Pennsylvania and a greater proportion of manufacturing in Pennsylvania more favorably, by exempting more of the corporate headquarters. Distinguishing *Westinghouse Electric Corp. v. Tully*, 466 U.S. 388, 403, 104 S.Ct. 1856, 1865–66, 80 L.Ed.2d 388 (1984), because, in that case, local parent companies were given an advantage against out-of-state companies in proportion to the exports the companies moved through the state, and applying the test established in *Complete Auto Transit, Inc. v. Brady*, 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), we held that there is no discriminatory effect on interstate commerce because there is no incidence of interstate commerce that is burdened or discriminated against by the apportionment method used in this case.[6]

As to the Equal Protection Clause or the Pennsylvania Uniformity Clause, we rea-

soned that the Department's application of the manufacturing exemption did not violate the constitutional provisions because the tax exemption does not establish an unreasonable classification. *See Leventhal v. City of Philadelphia*, 518 Pa. 233, 542 A.2d 1328 (1988). The only classification asserted by PPG is one between Pennsylvania corporations, with their headquarters in the state, based on whether they perform a substantial amount of manufacturing outside of the state. Neither the capital stock tax nor the manufacturing exemption make such a classification. All corporations with manufacturing in the state are entitled to an exemption based on in-state manufacturing.[7]

As summarized above and for the additional reasons explained in our previous memorandum opinion, we rejected PPG's arguments and affirmed the order of the Board. PPG filed exceptions which were argued before the court en banc.[8] PPG's exceptions, however, raise the same arguments that were put forth before the panel, with the exception of its reliance on a recent United States Supreme Court case for its allegation that the Department's application of the manufacturing exemption violates the Commerce Clause. Because the U.S. Supreme Court's decision in *Fulton Corporation v. Faulkner*, —— U.S. ——, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996), was decided after our initial decision, we will readdress the Commerce Clause issue.

PPG contends that the Department's method of applying the capital stock tax violates the Commerce Clause because it dis-

---

**6.** We reasoned in our original opinion, that:
[W]hile the exemption encourages manufacturing within the Commonwealth, it does so based on a direct relationship to manufacturing within the state, not to any interstate transaction or incidence. As long as a state does not tax a transaction or incidence, or if it does tax it not more heavily when it crosses state lines, fair encouragement of in-state business through taxing policies is not unconstitutional. *Armco, Inc. v. Hardesty*, 467 U.S. 638, 645–46 [104 S.Ct. 2620, 2624–25, 81 L.Ed.2d 540] (1984). See also *New Energy Company of Indiana v. Limbach*, 486 U.S. 269, 273–74 [108 S.Ct. 1803, 1807, 100 L.Ed.2d 302] (1988) ("[T]he Commerce Clause prohibits economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by [unduly] burdening out-of-state competitors"). If all

encouragement of in-state business was unconstitutional, then what would be at issue here is not whether the in-state or out-of-state proportion burdens interstate commerce, but whether the manufacturing exemption *in toto* burdens interstate commerce and is unconstitutional.

**7.** As we stated in our previous opinion, the purpose of the exemption is to encourage manufacturing in the state, not to encourage the location of the corporate headquarters in the state, as PPG seems to believe.

**8.** Exceptions filed pursuant to Pa.R.A.P. 1571(i) have the effect of an order granting reconsideration. *Kalodner v. Commonwealth*, 161 Pa. Cmwlth. 226, 636 A.2d 1230 (1994).

criminates against interstate commerce in the same way as the personal property tax deduction in *Fulton Corp.* In *Fulton Corp.*, North Carolina imposed an "intangibles tax" on the fair market value of corporate stock owned by residents with a deduction equal to the fraction of the issuing corporation's tax apportionment factor, based on the corporation's sales, payroll and property within the state. If a corporation did all of its business in North Carolina, then it would pay corporate income tax on 100% of its income and residents holding its stock would be permitted a 100% deduction for the value of that stock under the intangibles tax. Likewise, if the corporation did part of its business in North Carolina, then its corporate income tax would be apportioned accordingly and a resident holding its stock would be permitted a deduction on its intangibles tax to the same proportion.[9]

Discussing the application of the Commerce Clause, the court in *Fulton Corp.* stated that it prohibits regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors in order to prevent a state from retreating into economic isolation or jeopardizing the welfare of the nation by placing a burden on commerce across its borders that commerce within its borders does not bear. *Id.* —— U.S. at ——, 116 S.Ct. at —— (citations omitted). Citing *Complete Auto Transit*, the court stated that a state tax has a discriminatory effect if it taxes a transaction or incident more heavily when it crosses state lines than when it occurs entirely within the state. Applying the Commerce Clause to the North Carolina "intangibles tax", the Supreme Court in *Fulton Corp.* held that the tax is facially discriminatory because it taxes stock owned by residents only to the degree that its issuing corporation participates in interstate commerce favoring domestic corporations over their foreign competitors in raising capital among North Carolina residents.

Unlike the tax at issue here, *Fulton Corp.* discriminates between foreign and domestic corporations by discouraging stock ownership of foreign corporations. The manufacturing exemption, however, does not distinguish between domestic and foreign corporations. PPG, like all corporations subject to the capital stock tax or franchise tax, can elect the method of taxation that is most beneficial to it. Once the method is elected, all corporations, whether domestic or foreign, are treated alike. The method of calculating the capital stock is not based on transactions or incidents crossing state lines, but only on whether and how much of the corporate headquarters supports manufacturing within the state. The decision in *Fulton Corp.* does not find that the three-factor apportionment as applied to the corporation's tax is discriminatory,[10] but only as it applies to holders of stock to favor domestic corporations over foreign corporations. Accordingly, PPG's exception raising a Commerce Clause violation is denied.

As to PPG's other exceptions, that the Department improperly applied the manufacturing exemption and that the exemption violated the Equal Protection Clause and the Pennsylvania Uniformity Clause, after reviewing our previous opinion and revisiting PPG's arguments, suffice it to say that PPG has been unable to convince us that our original decision is flawed. We will, therefore, deny the exceptions, relying upon our original decision, and affirm the order of the Board.

### ORDER

AND NOW, this 19th day of June, 1996, the exceptions of PPG Industries, Inc. are dismissed. In accordance with the decision of this court in *PPG Industries, Inc. v. Commonwealth of Pennsylvania*, (No. 2355 C.D. 1987, filed November 3, 1995), the order of

---

9. In 1990, for example, the Secretary [of Revenue] determined the appropriate taxable percentage of IBM stock to be 95%, meaning that IBM did 5% of its business in North Carolina, with it stock held by North Carolina residents being taxable on 95% of its value. N.C. Dept. of Revenue, Stock and bond Values as of December 31, 1990, p. 39.

*Fulton Corp.,* —— U.S. at ——, 116 S.Ct. at ——.

10. *See Container Corp. v. Franchise Tax Board,* 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545 (1983).

the Board of Finance and Revenue, dated October 2, 1987, No. R–10,904, is affirmed and the Chief Clerk is directed to enter judgment in favor of the Commonwealth of Pennsylvania.

McGINLEY, Judge, dissenting.

I respectfully dissent. The majority concludes that the application of the capital stock tax manufacturing exemption by the Department of Revenue does not violate the Commerce Clause of the United States Constitution. I do not agree.

The Commerce Clause prohibits states from imposing taxes which discriminate against interstate commerce by providing direct commercial advantages to businesses within the state. *Westinghouse Electric Corp. v. Tully,* 466 U.S. 388, 104 S.Ct. 1856, 80 L.Ed.2d 388 (1984). When a statute is challenged as unconstitutional under the Commerce Clause we must "determine whether the statute under attack ... will in its practical operation work discrimination against interstate commerce." *Maryland v. Louisiana,* 451 U.S. 725, 756, 101 S.Ct. 2114, 2134, 68 L.Ed.2d 576 (1981).

The Department's application of the manufacturing exemption has a discriminatory economic effect on multi-state corporations with a low percentage of manufacturing in Pennsylvania. If a multi-state corporation expands its manufacturing in another state, one of the direct costs of the expansion is an increase in the capital stock tax. Conversely, if a multi-state corporation expands in Pennsylvania the capital stock tax decreases. Not only does the manufacturing exemption provide a positive incentive for multi-state corporations to increase manufacturing in Pennsylvania, but it penalizes corporations for manufacturing in other states. Thus, the Department's application of the exemption substantially discriminates against out-of-state manufacturing in violation of the Commerce Clause.

I would reverse.