790 A.2d 261

PPG INDUSTRIES, INC., Appellant

v.

COMMONWEALTH of Pennsylvania, BOARD OF FINANCE AND REVENUE, Appellee.

Supreme Court of Pennsylvania.

Submitted Feb. 25, 2000.

Decided Nov. 30, 2001.

Reconsideration Denied Feb. 1, 2002.

582

Robert Hoffman, Christopher Zettlemoyer, Reed Smith Shaw & McClay, Harrisburg, Stewart M. Weintraub, Philadelphia, Thomas D. Arbogast, Schnader, Harrison, Segal & Lewis, Pittsburgh, for PPG Industries, Appellant.

D. Michael Fisher, Atty. Gen., John J. Butcher, Senior Deputy Atty. Gen., for the Com., Appellee.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN and SAYLOR, JJ.

## OPINION

ZAPPALA, Justice.

This is a direct appeal from an order of the Commonwealth Court, affirming the order of the Board of Finance and Revenue (Board).[1] On June 17, 1999, we issued an opinion and order holding that the manufacturing exemption to Pennsylvania's capital stock tax and franchise tax, Section 602 of the Tax Reform Code of 1971[2] (Code), facially discriminated against interstate commerce. *PPG Industries, Inc. v. Com-*

1. Pursuant to 42 Pa.C.S. § 723(b), any final order of the Commonwealth Court entered in any appeal from a decision of the Board of Finance and Revenue is appealable to this Court, as of right. *See also* Pa.R.A.P. 1101(a)(2).

2. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7602.

*monwealth,* 567 Pa. 565, 790 A.2d 252 (1999) (*PPG I*). We remanded the matter to the Commonwealth Court for a hearing on the following issues:

1. Whether 72 P.S. § 7602 is a "compensatory tax" as defined by *Fulton Corp. v. Faulkner,* 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996).

2. If it is determined that 72 P.S. § 7602 is not a "compensatory tax," and that 72 P.S. § 7602 is therefore unconstitutional as it violates the Commerce Clause of the United States Constitution, what is the appropriate remedy.

After a hearing before the Commonwealth Court, Judge Colins issued an Interim Report. After reviewing this Interim Report, the record and the filings by the parties, we conclude that the manufacturing exemption to Section 602[3] discrimi-

---

**3.** Section 602 imposes a capital stock tax on domestic entities and a franchise tax on the capital stock of foreign entities at the rate of ten mils for the year 1983 (the tax year at issue in the instant case). The computations for the capital stock tax, Section 602(a), are distinct from those for the franchise tax, Section 602(b)(1). Under the Code, a domestic or foreign entity may elect to compute and pay its taxes under either computational method. *Commonwealth v. After Six, Inc.,* 489 Pa. 69, 413 A.2d 1017 (1980).

The manufacturing exemption to Section 602 provides exemptions from the capital stock tax as follows:

> Provided, That ... the provisions of this section shall not apply to the taxation of the capital stock of entities organized for manufacturing, processing, research or development purposes, which is invested in and actually and exclusively employed in carrying on manufacturing, processing, research or development within the State ... shall pay the State tax ... upon such proportion of its capital stock, if any, as may be invested in any property or business not strictly incident or appurtenant to the manufacturing, processing, research or development business, ... it being the object of this provision to relieve from State taxation ... only so much of the capital stock as is invested purely in the manufacturing, processing, research or development plant and business.

72 P.S. § 7602(a).

The manufacturing exemption to Section 602 provides exemptions from the franchise tax as follows:

> Provided, That the manufacturing, processing, research and development exemptions contained under section 602(a) shall also apply to foreign corporations and in determining the relevant apportionment factors the numerator of the property, payroll, or sales factors shall not include any property, payroll or sales attributable to manufactur-

nates against interstate commerce and therefore violates the Commerce Clause of the United States Constitution.[4]

As detailed in our opinion in *PPG I*, Appellant, PPG Industries, Inc. (PPG), a Pennsylvania corporation, conducts manufacturing operations at plants located both within Pennsylvania and in other states. PPG administers all of these manufacturing operations from its Pittsburgh, Pennsylvania headquarters. At issue in this case is the capital stock tax on PPG's headquarters for the year 1983.

PPG filed a petition for review in the Commonwealth Court, challenging on constitutional and statutory construction grounds the order of the Board of Finance and Revenue which affirmed the resettlement of PPG's 1983 tax return[5] by the Department of Revenue and the Auditor General.[6] By memorandum opinion and order dated November 3, 1995, a panel of

ing, processing, research or development activities in the Commonwealth.

72 P.S. § 7602(b)(1).

4. U.S. Const. art. 1, § 8, cl. 3.

5. For its 1983 taxes, PPG elected to compute its headquarters' capital stock tax as if it was a foreign corporation paying a franchise tax, utilizing Section 602(b)(1) "three-factor apportionment." Under the "three-factor apportionment" method, the amount subject to tax is computed by multiplying the value of the corporation's capital stock by an apportionment factor. The apportionment factor is found by calculating the average of three ratios: tangible property in Pennsylvania to tangible property everywhere; payroll in Pennsylvania to payroll everywhere; and sales in Pennsylvania to sales everywhere. The franchise tax statute permits a corporation to reduce its tax liability through operation of the manufacturing exemption, which excludes from the numerators of the fractions the value of the corporation's property, payroll and sales used in the administration of manufacturing in the Commonwealth.

 For its 1983 taxes, PPG exempted from taxation the value of property and payroll related to the administration of *all* of its manufacturing operations, regardless of whether such operations were in-state or out-of-state. After auditing PPG's 1983 tax return, the Department of Revenue and the Auditor General took the position that PPG's headquarters' property and payroll were entitled to the manufacturing exemption only insofar as the headquarters' employees administered manufacturing plants in-state.

6. Although we are here concerned with PPG's 1983 tax return, appeals for PPG's subsequent filings through and including 1998 are pending.

the Commonwealth Court rejected PPG's constitutional and statutory arguments and affirmed the resettlement. PPG filed exceptions and a motion for *en banc* review. The motion was granted by order dated December 13, 1995. By opinion and order dated June 19, 1996, the Commonwealth Court *en banc* denied the exceptions. *PPG Industries, Inc. v. Commonwealth,* 681 A.2d 832 (Pa.Cmwlth.1996).

PPG subsequently filed a timely direct appeal to this Court. Oral argument was heard on September 16, 1997. On June 17, 1999, we issued our *PPG I* opinion. We held that the United States Supreme Court's decisions in *Fulton Corp. v. Faulkner,* 516 U.S. 325, 116 S.Ct. 848, 133 L.Ed.2d 796 (1996), *Westinghouse Electric Corp. v. Tully,* 466 U.S. 388, 104 S.Ct. 1856, 80 L.Ed.2d 388 (1984), and *Boston Stock Exchange v. State Tax Commission,* 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977), compelled a finding that the manufacturing exemption to Section 602 facially discriminated against interstate commerce. We reasoned that the manufacturing exemption constituted a discriminatory tax measure because it resulted in differential tax liability dependent upon whether the taxpayer engaged in in-state or out-of-state commercial activities, thereby affording preferential treatment to corporations engaged in manufacturing in the Commonwealth.

We did not, however, declare Section 602 unconstitutional at that point. Pursuant to the procedure established by this Court in *Annenberg v. Commonwealth,* 562 Pa. 570, 757 A.2d 333 (1998) (*Annenberg I*), and *Annenberg v. Commonwealth,* 562 Pa. 581, 757 A.2d 338 (2000) (*Annenberg II*), *cert. denied, Annenberg v. Board of Comm'rs of Montgomery Co., Pa.,* 531 U.S. 959, 121 S.Ct. 385, 148 L.Ed.2d 296 (2000), we remanded to the Commonwealth Court for a hearing on the issues related to whether Section 602 is a compensatory tax,[7] and therefore constitutional, and retained jurisdiction.

7. As stated by this Court in *Annenberg I:*

 [O]nce a determination has been made that a statute is facially discriminatory, the burden then shifts to the state to establish that the statute "advances a legitimate local purpose that cannot be adequately served by reasonably nondiscriminatory alternatives." *New Energy*

Following this Court's remand order, the parties filed a comprehensive Stipulation of Facts with the Commonwealth Court.[8] On November 15, 1993, Judge Colins conducted a hearing in which PPG and the Commonwealth participated. At the hearing, the Commonwealth conceded that Section 602 is not a compensatory tax; neither the Commonwealth nor PPG offered any evidence on the issue.

Judge Colins filed his Interim Report with this Court on November 30, 1999. Judge Colins found that Section 602 is not a compensatory tax. Interim Report at 16. With regard to the issue of the appropriate remedy, Judge Colins made the following conclusions of law:

The constitutional infirmity of Section 602 can be cured by the following remedies, in order of descending extremity:

a. Invalidating [Section 602] in its entirety;

b. Invalidating the manufacturing exemption in its entirety;

c. Invalidating the Section 602(a) exemption's restrictive phrase, "within the State," having the effect of exempting the capital stock of entities organized for manufacturing, processing, research or development purposes, which is invested in and actually exclusively employed

---

Co. [of Indiana v. Limbach], 486 U.S. at 278, 108 S.Ct. at 1810, 100 L.Ed.2d 302 at 311. In the language of Fulton, there are

three conditions necessary for a valid compensatory tax. First, a State must, as a threshold matter, identify ... the intrastate tax burden for which the State is attempting to compensate. Second, the tax on interstate commerce must be shown roughly to approximate—but not exceed—the amount of the tax on intrastate commerce. Finally, the events on which the interstate and intrastate taxes are imposed must be substantially equivalent; that is, they must be sufficiently similar in substance to serve as mutually exclusive proxies for each other.

516 U.S. at 332–333, 116 S.Ct. at 854–855, 133 L.Ed.2d at 806 (citations and internal quotation marks omitted).

757 A.2d at 337–338.

8. The Stipulation of Facts addressed: (1) the operation of Section 602, including apportionment methodology and the manufacturing exemption; (2) the taxation of PPG's corporate headquarters; and (3) the significance and scope of Section 602.

in carrying on manufacturing, processing, research or development both within and outside the State[;]

d. Interpret the exemption to exclude any corporate assets not strictly incident or appurtenant to the manufacturing business; that is, PPG's corporate headquarters.

Interim Report at 16–17.

After weighing these four options, Judge Colins made the following recommendation:

In order to redress the constitutional deprivation in this case, without engaging in a judicial re-write of [Section 602] or the manufacturing exemption, the Court, sitting as a master, would recommend the adoption of PPG's proposed remedy for the duration of the contested period, invalidating the Section 602(a) exemption's restriction to capital stock related to manufacturing "within the State" in the limited "headquarters context." Prospectively, we would recommend invalidating the exemption in its entirety, leaving to the General Assembly the task of amending Section 602 in such a way that incorporates its own intentions and constitutional considerations.

Interim Report at 18.

Although this Court directed the Commonwealth Court on remand to determine whether Section 602 was a compensatory tax, the Commonwealth made no attempt to meet its burden of proving that Section 602 was compensatory; the parties *conceded* that Section 602 is *not* compensatory. Because the Commonwealth has failed to carry its burden of establishing that Section 602 is a compensatory tax, we are compelled to hold that the manufacturing exemption to Section 602 is unconstitutional as it violates the Commerce Clause of the United States Constitution.[9]

9. On December 15, 1999, in response to this Court's opinion in *PPG I*, the Governor signed into law Act 1999–63 (Act 63), which, *inter alia*, amends Section 602. As amended, the manufacturing exemption takes the following form:

[T]he numerator of the property and payroll factors shall not include any property or payroll attributable to manufacturing, processing,

In reviewing the Interim Report, there are no factual findings on the compensatory tax issue for this Court to review and we are left solely with the issue of determining the appropriate remedy, which is purely a question of law. As with all questions of law, our standard of review is plenary. *Phillips v. A–Best Products Co.*, 542 Pa. 124, 665 A.2d 1167 (1995).

In the Interim Report, Judge Colins outlined the four remedies lobbied for by the parties on remand. PPG argued for the retroactive expansion of the manufacturing exemption in the limited context of headquarters' property and payroll, by excising from Section 602(a) the phrase "within the state," thereby extending the exemption to corporations engaged in both in-state and out-of-state manufacturing. In the alternative, PPG argued for the invalidation of Section 602 in its entirety. The Commonwealth proposed interpreting the manufacturing exemption as not applicable to PPG's headquarters. In the alternative, the Commonwealth sought prospective invalidation of the manufacturing exemption in its entirety.

In addressing this issue, Judge Colins recommended employing a hybrid approach, which combines the remedies suggested by the parties: (1) retroactively expanding the manufacturing exemption for tax year 1983 to corporations engaged in both in-state and out-of-state manufacturing; and (2) prospectively invalidating the manufacturing exemption in its entirety. PPG argues that this Court should adopt Judge Colins's recommendation, asserting that Judge Colins's resolution constitutes an appropriate remedial approach to recon-

research or development activities in the Commonwealth *and any property or payroll attributable to manufacturing, processing, research or development activities outside of the Commonwealth shall also be excluded from the numerator of the property and payroll factors.* (emphasis added). The effect of the amendment is that the manufacturing exemption applies to the administration of both in-state and out-of-state manufacturing. This revision applies only to the 1999 and 2000 tax years; thereafter, the exemption reverts to a form that more closely resembles the version of Section 602 at issue here. *See* Act 63, Section 1, enacting §§ 602(b)(1)(I & II). This time-limited revision presumably reflects the General Assembly's intent to revisit the issue.

structing the manufacturing exemption so as to render the tax constitutional.

The public policy of this Commonwealth favors severability. *See Annenberg II,* 757 A.2d at 346; *Commonwealth, Department of Education v. The First School,* 471 Pa. 471, 370 A.2d 702, 705 (1977). The Statutory Construction Act provides:

> The provisions of every statute shall be severable. If any provision of any statute ... is held invalid, the remainder of the statute ... shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. § 1925. It is a general rule that provisions of the Statutory Construction Act, 1 Pa.C.S. § 1501 *et seq.,* cannot be applied to statutes enacted prior to 1937.[10] 1 Pa.C.S. § 1502(a)(1)(i). However, where the Statutory Construction Act merely codified existing statutory construction law, the general rule does not control and those particular provisions of the Statutory Construction Act shall be applied to statutes enacted prior to 1937. 1 Pa.C.S § 1502(b). Because the principles of severability as set forth in 1 Pa.C.S. § 1925 are

10. The first capital stock tax was enacted in 1840, Act of June 11, 1840, No. 232, P.L. 612. In 1868, it was extended to foreign corporations, Act of May 1, 1868, No. 69, P.L. 108. In 1885, the first manufacturing exemption was added, Act of June 30, 1885, No. 162, P.L. 193. In 1935, the tax was amended to designate capital stock tax on foreign corporations as a franchise tax, and rules were provided for apportionment, Act of May 16, 1935, No. 86, P.L. 184. The manufacturing exemption was repealed in 1935, conditionally reenacted in 1943, Act of May 27, 1943, No. 323, P.L. 762, but not made effective again until 1958, Act of March 15, 1956, No. 395, P.L. 1285. The Tax Reform Code, Act of March 4, 1971, No. 2, P.L. 6, reenacted and codified the capital stock and franchise tax provisions, omitting the exemptions. The exemptions were restored for the second half of 1972 and tax years thereafter, Act of August 31, 1971, No. 93, P.L. 362.

clearly a restatement of the law as it existed prior to 1937, *see Annenberg II*, 757 A.2d at 346 n. 10; *Com. ex rel. Woodruff v. Humphrey*, 288 Pa. 280, 136 A. 213, 216 (1927); *Rothermel v. Meyerle*, 136 Pa. 250, 20 A. 583 (1890), 1 Pa.C.S § 1925 applies to this matter.

 The first remedy presented by the Commonwealth is to prospectively interpret the language of Section 602 as excluding PPG's headquarters from the manufacturing exemption.[11] The Commonwealth reasons that PPG's operations at its headquarters are not exempt unless they are "appurtenant" to the manufacturing business, pursuant to the express terms of Section 602(a). However, Section 602(a) does not require property or payroll to be "appurtenant" to the manu-

11. In making this argument, the Commonwealth urges a re-examination of this Court's holding in *PPG I* that the manufacturing exemption to Section 602 facially discriminates against interstate commerce. *See* Appellee's Brief at 7-11. However, our holding in *PPG I* that the manufacturing exemption facially discriminates against interstate commerce is the law of the case. "The law of the case doctrine provides, in pertinent part, that 'upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court....'" *Commonwealth v. Yarris*, 557 Pa. 12, 731 A.2d 581, 586 (1999), *quoting Commonwealth v. Starr*, 541 Pa. 564, 664 A.2d 1326, 1331 (1995). Had the Commonwealth desired to properly challenge our holding in *PPG I*, it could have filed an *Application for Reargument* pursuant to the Rules of Appellate Procedure. *See* Pa. R.A.P. 2541 *et seq.* Although the dissent opines that we should address the Commonwealth's position in light of "the highly unusual circumstances presented", *see* Dissenting Opinion at 3, we may not depart from the law of the case doctrine unless confronted with exceptional circumstances, such as "where the prior holding was clearly erroneous and would create a manifest injustice if followed." *Yarris*, 731 A.2d at 586. Such is not the case here; our holding was not clearly erroneous.

According to the dissent, it is the "methodology", i.e., the "headquarters subfactor", which discriminates against interstate commerce, not the manufacturing exemption itself. However, this assertion overlooks the fact that the headquarters subfactor is utilized by the Commonwealth in order to give effect to the restrictive phrases in Section 602(a) and (b), "within the State" and "in the Commonwealth."

The absurdity of the Commonwealth's position is further evident by the suggested remedies predicated on this argument. For if it is the "methodology" and not the statute itself which is unconstitutional, there would be no need to interpret Section 602 as excluding PPG's headquarters from the manufacturing exemption (*see infra* at 268), or to sever the manufacturing exemption from Section 602 (*see infra* at 268–69).

facturing plant to be non-taxable. The statutory requirement in Section 602(a) is expressly stated in the alternative: property must be "strictly incident *or* appurtenant" (emphasis supplied). Section 602 cannot be interpreted as excluding PPG's headquarters from the manufacturing exemption on this basis.

■ The first remedy presented by PPG is to sever the words in Section 602 that establish the "in-state" requirement in the manufacturing exemption:

> Under § 602(a), . . . the tax does not apply to capital stock "which is invested in and actually and exclusively employed in carrying on manufacturing, processing, research or development *within the State* . . . ." (emphasis supplied). The constitutional problem is cured by excising, in the limited "headquarters context", the underlined language above ("within the State"). It is not necessary to make an analogous change in § 602(b)(1), since that section expressly incorporates the manufacturing, processing, and research and development exemptions contained in § 602(a).

Appellant's Brief at 23.

If this Court were to adopt PPG's recommendation, the result would be the extension of the manufacturing exemption to manufacturing generally, i.e., to corporations engaged in both in-state and out-of-state manufacturing. This we cannot do.

■ When this Court severs a void provision from a statute, it is doing so to attempt to effectuate legislative intent. In *PPG I*, however, we contemplated the legislative intent behind the manufacturing exemption and specifically found that applying the manufacturing exemption to manufacturing generally was contrary to legislative intent:

> In *Commonwealth v. Weldon Pajamas, Inc.*, 432 Pa. 481, 248 A.2d 204 (1968), this Court critically analyzed the manufacturing exemption:
>
> > Historically, the manufacturing exemption . . . has been reserved to those corporations organized for manufacturing purposes and *actually engaged* in manufacturing in Pennsylvania.

\* \* \*

> Our analysis of the statute and its long and involved history convinces us that ... the legislature intended the manufacturing exemption to apply only to those corporations actually engaged in manufacturing in Pennsylvania.

248 A.2d at 205 (emphasis in original).

\* \* \*

> The manufacturing exemption is a locational incentive that "was created in order to establish a favorable climate in Pennsylvania for manufacturers and thus encourage the development of industry." *Commonwealth v. Deitch Company*, 449 Pa. 88, 295 A.2d 834, 838 (1972). The manufacturing exemption does not apply to manufacturing generally.

790 A.2d at 256. Accordingly, we reject PPG's argument and decline to extend the manufacturing exemption to manufacturing generally.

█ The second remedy presented by the Commonwealth is to sever the manufacturing exemption from Section 602. PPG counters with its second remedy, invalidating Section 602 in its entirety. Thus, the question becomes whether the manufacturing exemption is severable from Section 602.

The rules of statutory construction provide that the void provision of the statute be severed unless "it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one...." 1 Pa.C.S. § 1925. The General Assembly first added the manufacturing exemption to the capital stock and franchise tax statute in 1885, forty-five years after the General Assembly enacted the first capital stock tax in 1840 (*see supra* note 10). Since then, the General Assembly has repealed and reenacted the manufacturing exemption twice. Given this factual background, we must disagree with PPG's contention that "it is virtually inconceivable that the legislature ... would want to maintain the tax without the exemption." Brief for Appellant at 32. To the contrary, the legislature has maintained the tax both

with and without the exemption for the last one-hundred sixteen years.

In further support of its argument, PPG claims that the recent enactment of Act 63 is compelling evidence that the General Assembly considers the manufacturing exemption to be an integral part of Section 602. This argument fails because it requests that we focus not on the intent of the legislature which enacted the void provision of this statute, but instead on the intent that can possibly be inferred from the enactment of Act 63. As we have previously stated, such an analysis is not in accord with our rules of statutory construction:

Clearly, [1 Pa.C.S. § ] 1925 funnels our inquiry to examining what the enacting legislature would have done had it known that the exemption ... was unconstitutional. The statute does not ... instruct us to examine what subsequent legislatures would have intended vis-a-vis the ... tax.

*Annenberg II,* 757 A.2d at 347.

For the foregoing reasons, we reject the arguments against severability and sever the manufacturing exemption from Section 602. The net effect of this severance is that the capital stock of domestic and foreign entities which had previously escaped the capital stock and franchise taxes by virtue of the manufacturing exemption will now be subject to the taxes.

We now turn to the question of what retrospective remedy, if any, is due to the taxpayers.[12] The United States Supreme Court's decision in *McKesson v. Division of Alcoholic Beverages and Tobacco, Dept. of Business Regulation of Florida,* 496 U.S. 18, 110 S.Ct. 2238, 110 L.Ed.2d 17 (1990), dictates that some retroactive remedy is due here so that the prior unconstitutional discrimination is rectified. In *McKesson,* the

12. In the typical taxation case in which a challenge to a locational tax incentive is brought, it is usually a taxpayer who is not receiving the benefit of the incentive who challenges the incentive as discriminatory. In this case, however, it is the party receiving the benefit which has mounted the challenge. *See PPG I,* 790 A.2d at 260 n. 10. As appeals of PPG's tax filings from 1984 to 1988 remain pending (*see supra* note 6), any retrospective remedy would apply to such pending cases, as well as any pending appeals by any other taxpayers regarding this issue.

Supreme Court noted that the Due Process Clause of the Fourteenth Amendment requires that the State fashion a backwards looking remedy whereby those who had paid the discriminatory tax are put in the same position as those taxpayers who had been favored by the unlawful exemption. 496 U.S. at 43, 110 S.Ct. 2238; *see also Annenberg II*, 757 A.2d at 349–350; *Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 751–753, 115 S.Ct. 1745, 131 L.Ed.2d 820 (1995); *Harper v. Virginia Dept. of Taxation*, 509 U.S. 86, 97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). The *McKesson* Court provided several retrospective remedies which would cure the previous discrimination: (1) refunding the difference between the tax paid and the tax that would have been assessed had the taxpayer been granted the unlawful exemption, to those who were discriminated against by the unlawful exemption; (2) assessing and collecting back taxes, to the extent consistent with other constitutional restrictions,[13] from those who benefited from the unlawful exemption during the contested period, calibrating the retroactive assessment to create in hindsight a nondiscriminatory scheme; or (3) applying a combination of a partial refund and a partial retroactive assessment, so long as the resultant tax actually assessed during the contested tax period

13. Regarding these "other constitutional restrictions," the United States Supreme Court stated:

> We previously have held that the retroactive assessment of a tax increase does not necessarily deny due process to those whose taxes are increased, though beyond some temporal point the retroactive imposition of a significant tax burden may be "so harsh and oppressive as to transgress the constitutional limitation," depending on "the nature of the tax and the circumstances in which it is laid." *Welch v. Henry*, 305 U.S. 134, 147, 59 S.Ct. 121, 83 L.Ed. 87 (1938). *See United States v. Hemme*, 476 U.S. 558, 106 S.Ct. 2071, 90 L.Ed.2d 538 (1986); *United States v. Darusmont*, 449 U.S. 292, 101 S.Ct. 549, 66 L.Ed.2d 513 (1981); *cf. United States v. Sperry Corp.*, 493 U.S. 52, 65, 110 S.Ct. 387, 396, 107 L.Ed.2d 290, (1989) ("It is surely proper for congress to legislate retrospectively to ensure that costs of a program are borne by the entire class of persons that Congress rationally believes should bear them"); *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16, 96 S.Ct. 2882, 2893, 49 L.Ed.2d 752 (1976) ("Legislation readjusting rights and burdens is not unlawful solely because it upsets the otherwise settled expectations. This is true even though the effect of the legislation is to impose a new duty or liability based on past acts") (citations omitted).

496 U.S. at 40 n.23, 110 S.Ct. at 2252.

reflects a scheme that does not discriminate against interstate commerce. 496 U.S. at 40–41, 110 S.Ct. 2238.

Accordingly, we hold that 72 P.S. § 7602 is not a compensatory tax and the manufacturing exemption is therefore unconstitutional as it violates the Commerce Clause; that the void exclusionary language is severable; and direct that the Commonwealth must forthwith provide a retrospective remedy consistent with this opinion.

Jurisdiction is relinquished.

Justice CAPPY concurs in the result.

Justice SAYLOR files a dissenting opinion in which Justice CASTILLE joins.

Justice SAYLOR dissenting.

The Commonwealth opens its brief with a detailed argument that an incorrect assumption clouded this Court's initial determination that the manufacturing exemption in Pennsylvania's scheme of capital stock/franchise taxation facially discriminates against interstate commerce. *See PPG Industries, Inc. v. Commonwealth,* 567 Pa. 565, 790 A.2d 252 (1999)("*PPG I*"). Specifically, the Commonwealth asserts as follows:

> In its interim decision of June 17, 1999, this Court held that, as it had been applied to PPG's headquarters, the manufacturing exemption in 72 P.S. § 7602 discriminated against interstate commerce, and thus concluded that Section 7602 is unconstitutional *on its face.* The issue actually before the Court, however, was quite narrow: the methodology used in applying the manufacturing exemption to the property and payroll at PPG's administrative headquarters. We believe that, in focusing on this narrow issue, the parties unwittingly may have given the Court the impression that a) the methodology used for PPG's headquarters is required by the statute itself; and b) the exemption is computed for all manufacturing assets as it was computed for PPG's head-quarters. Neither is the case.

Rather, the methodology used for PPG's headquarters utilized a *secondary* apportionment factor which is not found in the statute itself, but which the Department of Revenue developed administratively to deal with the unusual situation presented by PPG's headquarters. That methodology, unfortunately, does indeed discriminate against out-of-state activities. But in all other cases, the *primary* apportionment methodology—which is found in the statute itself—operates neutrally as to in-state and out-of-state activities. Apparently, the parties failed to make this clear to the Court, and the Court issued its interim decision under this misapprehension, understandably concluding that Section 7602 is *facially* unconstitutional.

The Court's decision, however, is not yet final: the Court has retained jurisdiction and now has an opportunity to adopt a remedy to cure the constitutional infirmity. Since the issue we have described will directly affect the scope of that remedy, we believe that it is appropriate for the parties respectfully to draw the Supreme Court's attention to the fundamental misunderstanding which underlies the interim decision.

This is especially true in light of the consequences which ride on this decision. Section 7602 is not a compensatory tax, and if it is unconstitutional *on its face*, then the manufacturing exemption must fall in its entirety. We estimate that, if this were to occur, the capital stock/franchise tax paid by manufacturers would rise by over *500%*, or over $600 million in the most recent fiscal year. The Court should not permit consequences of this magnitude to happen simply because the parties to a single case failed to make the law clear to a reviewing court.

Brief at 8–9 (emphasis in original). In subsequent passages of its brief, the Commonwealth presents an extensive and, in my view, compelling explanation of the distinction between the administrative methodology developed by the Department of Revenue (the "Department") exclusively to apply the manufacturing exemption to PPG's in-state headquarters activities and the established, statutory apportionment scheme which is ap-

plied in all other cases. Judge Colins' factual findings on remand reflect the agreement of the Commonwealth and PPG that Pennsylvania's scheme of capital stock and franchise taxation is not broadly unconstitutional, but that solely the methodology used by the Commonwealth relative to PPG's headquarters offended Commerce Clause non-discrimination principles.

The majority declines to address the parties' joint position on the strength of this Court's prior decision.[1] *See* Majority Opinion, at 267–68 n.11. In the highly unusual circumstances presented, however, I believe the position must be addressed. The Court retains jurisdiction over the case; the constitutional validity of a legislative enactment is involved and remains unchallenged by either party; and the analysis underlying this Court's prior determination of unconstitutionality is a critical component of the selection of remedy presently before us. Accordingly, I would conclude as follows:

## I. The Manufacturing Exemption is not Facially Discriminatory

The capital stock exemption for in-state manufacturing operations (the "manufacturing exemption") is set forth in Section 602(a) of the Tax Reform Code of 1971 ("Tax Code").[2] The relevant provisions of that section are recited by the majority. *See* Majority Opinion, at 263 n.3. In particular, Section 602(a) exempts from state taxation the capital stock of corporations organized specifically for manufacturing, processing, research or development (hereinafter, "manufacturing"), "which is invested in and actually and exclusively employed in carrying on" manufacturing within the state. *See* 72 P.S. § 7602(a). Thus, capital stock "invested in any property or business not strictly incident or appurtenant" to manufacturing activities is subject to taxation, the legislative object being to exempt only so much of the capital stock as is invested "purely" in manufacturing. *Id.*

1. I was ineligible to participate in *PPG I*, as the case was argued prior to my tenure on this Court.

2. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7602(a).

As the majority notes, PPG elected to compute its tax liability under the three-factor apportionment formula set forth in Section 602(b) of the Tax Code, 72 P.S. § 7602(b).[3] That section imports the manufacturing exemption from Section 602(a), *see* 72 P.S. § 7602(b)(1), and further specifies that it must be applied within the three-factor apportionment context by excluding from the numerators of the payroll, property, and sales fractions all payroll, property, or sales "attributable to" manufacturing activities within the Commonwealth. *See* 72 P.S. § 7602(b)(1)(i). Notably, however, these numerators also exclude payroll, property, and sales related to *all* out-of-state business activities, *see* 72 P.S. § 7401(3)2.(a)(9(B), 10, 13, 15), as they must to comport with Due Process and Commerce Clause constraints. *See generally Hunt–Wesson, Inc. v. Franchise Tax Bd. of Cal.,* 528 U.S. 458, 464, 120 S.Ct. 1022, 1026, 145 L.Ed.2d 974 (2000). Thus, under Section 602(b), all payroll, property, or sales directly involved in manufacturing *anywhere*—within or outside Pennsylvania—are excluded from the numerators of the apportionment fractions. On its face, therefore, while the Tax Code distinguishes between manufacturing and other business pursuits, it does not discriminate between in-state and out-of-state manufacturing, both of which are exempt from taxation. For Commerce Clause purposes, then, the manufacturing exemption is not facially discriminatory.[4]

## II. The Headquarters Subfactor is Facially Discriminatory

In auditing PPG's submissions for 1983, the Department was faced with an unusual circumstance: a company that

**3.** Under the three-factor approach, the taxpayer's payroll, property, and sales intrastate are compared with payroll, property, and sales everywhere, to arrive at the apportionment fraction. *See* Majority Opinion, at 264 n.5.

**4.** The majority states that, were this Court to simply strike the words "within the State" from the statute, the manufacturing exemption would then apply to both in-state and out-of-state manufacturing. *See* Majority Opinion, at 268. However, because out-of-state business activities are not taxed at all, the exemption has never had any application to out-of-state manufacturing.

centralized at its Pennsylvania headquarters the administration of all of its in-state and out-of-state manufacturing activities. Acting upon the premise that the headquarters qualified for the manufacturing exemption to the extent its activities pertained to manufacturing operations in Pennsylvania, the Department formulated a so-called "headquarters subfactor" to determine what percentage of PPG's headquarters' property and payroll were tax-exempt.[5] This "subfactor" was computed by dividing PPG's Pennsylvania non-headquarters payroll by PPG's non-headquarters payroll everywhere, yielding a fraction of 0.22. Hence, twenty-two percent of PPG's headquarters' property and payroll was deemed exempt under the manufacturing exemption.

In *Boston Stock Exchange v. State Tax Comm'n*, 429 U.S. 318, 97 S.Ct. 599, 50 L.Ed.2d 514 (1977), the Supreme Court struck down a New York State securities transfer tax. *See id.* at 328, 97 S.Ct. at 606. The tax at issue imposed a heavier burden on transactions involving an out-of-state sale than those in which the sale was made on a New York exchange. The Court explained that

New York's discriminatory treatment of out-of-state sales is made possible only because some other taxable event (transfer, delivery or agreement to sell) takes place in the State. Thus the State is using its power to tax an in-state operation as a means of requiring other business operations to be performed in the home State. As a consequence, the flow of securities sales is diverted from the most economically efficient channels and directed to New York. This diversion of interstate commerce and diminution of free competition in securities sales are wholly inconsistent with the free trade purposes of the Commerce Clause.

*Id.* at 336, 97 S.Ct. at 610 (internal quotation omitted).

Here, the effect of the headquarters subfactor used by the Department is directly analogous to the operation of the New York statute invalidated in *Boston Stock Exchange*. In-state operations—in this case, administrative activities at PPG's

5. No sales were attributed to PPG's headquarters.

headquarters—are taxed more or less heavily depending upon whether the manufacturing operations they administer are in-state or out-of-state. This scheme rewards companies such as PPG that move manufacturing operations into Pennsylvania in the form of a reduced state tax burden on its headquarters; it likewise penalizes companies (in the form of an increased tax burden on their headquarters) that move their manufacturing operations out of state. Therefore, the headquarters subfactor developed by the Department discriminates against interstate commerce and is unconstitutional under *Boston Stock Exchange*.[6]

It is important to note, however, that the offending feature of the tax scheme is not that companies are able to avail themselves of a favorable tax climate for manufacturing activities by moving such operations to Pennsylvania. Indeed, to the contrary, the Court in *Boston Stock Exchange* was careful to observe that "[o]ur decision today does not prevent the States from structuring their tax systems to encourage the growth and development of intrastate commerce and industry." *Boston Stock Exchange*, 429 U.S. at 336, 97 S.Ct. at 610. If Pennsylvania is able to compete effectively with other states for manufacturing business because of the manufacturing exemption here at issue, "such competition lies at the heart of a free trade policy" such as that promoted by the Commerce Clause. *Id.* at 337, 97 S.Ct. at 610; *accord Trinova Corp. v. Michigan Dep't of Treasury*, 498 U.S. 358, 385–86, 111 S.Ct. 818, 835, 112 L.Ed.2d 884 (1991). Rather, the unconstitutional aspect of the headquarters subfactor methodology is that the tax imposed by Pennsylvania on PPG's headquarters increases as other PPG business operations are moved or expanded out of state, and likewise decreases as those operations are moved or expanded in-state. It is on this basis that the headquarters

6. The Commonwealth Court determined that this scheme did not fail the test enunciated in *Boston Stock Exchange* because "nothing moving in interstate commerce is measured or affected by the exemption." *PPG Industries, Inc. v. Commonwealth*, 681 A.2d 824, 830 (Pa.Cmwlth. 1995). That assertion overlooks the fact that the material, labor, and financing necessary to construct or expand manufacturing operations potentially entail interstate elements.

subfactor, or sub-apportionment methodology, discriminates against interstate commerce.[7]

### III. The Majority's Holding Rests Entirely Upon an Analysis of the Headquarters Subfactor

In its interim decision, this Court relied for its holding exclusively upon the fluctuation in PPG's headquarters' tax liability occasioned by changes in location of PPG's manufacturing facilities extrinsic to those headquarters, such fluctuation being a consequence of the headquarters subfactor method employed by the Department. The Court stated:

> [B]y use of the Department's sub-apportionment methodology, PPG's headquarters' tax increases as PPG expands out-of-state activity which lacks tax nexus to Pennsylvania, even if there is no equivalent increase in headquarters' payroll.

*PPG I,* 565 Pa. at 575–577, 790 A.2d at 258, 1999 WL 396902 at *5 (quoting Brief for PPG at 20–21)(emphasis added).

This holding depends upon an interpretation of the statutory manufacturing exemption under which business operations extrinsic to a corporation's headquarters are permitted to "reach back" to the headquarters and determine the exempt portion of the latter. Were it not for this reach-back capability—embodied in the headquarters subfactor methodology developed by the Department—there would be no change to a company's Pennsylvania tax liability when a manufacturing facility is built, expanded, or reduced in-state or out-of-state. The reason is, as previously noted, that *all* manufacturing property, payroll, and sales (whether in-state or out-of-state) are excluded from the apportionment fraction numerators. Hence, but for the Department's use of the headquarters subfactor methodology, there would have been no basis upon which to conclude that the exemption operates to discriminate against out-of-state commerce.[8]

7. The state taxes analyzed in the other two Supreme Court cases that the majority chiefly relies upon were also invalidated based upon this same feature. *See Westinghouse Elec. Corp. v. Tully,* 466 U.S. 388, 400, 104 S.Ct. 1856, 1863, 80 L.Ed.2d 388 (1984); *Fulton Corp. v. Faulkner,* 516 U.S. 325, 333, 116 S.Ct. 848, 855, 133 L.Ed.2d 796 (1996).

8. The *PPG I* opinion contains a statement which, at first glance, appears to hold that the "reach-back" capability is mandated by the

The parties do not dispute that use of the headquarters subfactor constituted an administrative solution—a secondary apportionment factor developed by the Department specifically to handle taxation of PPG's headquarters, *see* Stipulation of Facts (S/F) 28–30, R.R. 24a—the primary apportionment method being the averaging of the payroll, property, and sales figures as prescribed by Section 401(3)2.(a) of the Tax Code, 72 P.S. § 7401(3)2.(a); nor do the parties dispute that, apart from the use of the headquarters subfactor, the statute is constitutional. *See* R.R. at 41A, 72A. There is also no doubt that the Court's evaluation of the effect of the headquarters subfactor formed the basis of its invalidation of the statutory manufacturing exemption in *PPG I*. Therefore, as the Department correctly observes, the *PPG I* decision must have been based upon an assumption that the *secondary* apportionment scheme used by the Department relative to PPG's headquarters comprised an integral part of the *primary* scheme as set forth in the statute. *See* Brief for Appellee at 7–11. A review of *PPG I* confirms that such was an assumption—and not a holding—as that opinion is devoid of any discussion of the question or any analysis by which a conclusion can be drawn that the secondary apportionment factor is statutorily required.

statute. In particular, the court stated, "The Commonwealth Court thus correctly determined that PPG's headquarters' property and payroll are entitled to the manufacturing exemption only insofar as the headquarters' employees administer manufacturing plants actually located in the Commonwealth." *PPG I*, 567 Pa. at 572, 790 A.2d at 256. The issue decided in that portion of the opinion, however, did not pertain to whether or not the statute mandated that any of the headquarters property or payroll should be exempt, but rather dealt with the question of whether out-of-state manufacturing activities entitled PPG to an exemption for the portion of the headquarters administering such activities. There was no discussion of the primary question of whether any of the headquarters capital stock should be exempt in the first instance, on the ground that no manufacturing occurred at headquarters. Taken in context, then, the Court's statement merely served to exclude from the exemption that portion of the headquarters associated with out-of-state manufacturing activities.

## IV. This Court Should Interpret the Statute to Disallow Use of the Headquarters Subfactor

Reviewing courts have a "duty to declare a statute constitutional if this can reasonably be done," *Triumph Hosiery Mills v. Commonwealth,* 469 Pa. 92, 96, 364 A.2d 919, 921 (1976)(quotation omitted), as it is "presumed '[t]hat the General Assembly does not intend to violate the Constitution'...." *Id.* (quoting Statutory Construction Act, 1 Pa.C.S. § 1922(3)). Presently, this can reasonably be done in the following manner.

As previously discussed, Section 602(b) of the Tax Code, 72 P.S. § 7602(b), declares that the manufacturing exemption must be implemented via exclusion from the apportionment factor numerators of all payroll, property, and sales "attributable to" manufacturing activities. While the functions of a corporation's free-standing, mixed-use headquarters, such as planning and coordination of manufacturing operations extrinsic to the headquarters, are arguably "attributable to" the company's manufacturing activities in a broad sense, it must not be overlooked that the manufacturing exemption imported into Section 602(b) is restrictively defined in Section 602(a). The exemption applies only to capital stock that is "invested purely in" manufacturing activities, and "actually and exclusively employed in carrying on" those activities, in the first instance. 72 P.S. § 7602(a); *see* § 7602(b) (importing the exemption from Section 602(a)). Furthermore, as with all tax exemptions, where there is any doubt as to its applicability, the manufacturing exemption at issue must be strictly construed against the taxpayer. *See* 1 Pa.C.S. § 1928(b)(5); *Commonwealth v. Peters Orchard Co.,* 511 Pa. 465, 473, 515 A.2d 550, 554 (1986); *cf. Commonwealth v. Greenville Steel Car Co.,* 469 Pa. 444, 451, 366 A.2d 569, 573 (1976)( noting that, "[a]s applied to a domestic corporation electing to be treated as a foreign corporation the use of the three factor apportionment formula ... is in the nature of an exemption or deduction and, as such, must be strictly construed"). Where, as here, a corporation's manufacturing operations take place at locations extrinsic to its mixed-use headquarters, there is

indeed some doubt that the headquarters-based administrative undertakings relative to those operations are "strictly incident or appurtenant" to the manufacturing business, or that the headquarters property and payroll are "exclusively and actually employed in carrying on" manufacturing, for purposes of Section 602, 72 P.S. § 7602.[9] Such doubt, as noted, should be resolved in favor of taxation by holding that none of PPG's headquarters qualifies for the manufacturing exemption, thus eliminating the exemption's purported discrimination against interstate commerce. As the statute is not otherwise facially discriminatory, it should be upheld.

## V. Conclusion

In accordance with the above, I would clarify the disposition announced in *PPG I* to indicate that the statutory manufacturing exemption violates the Commerce Clause solely to the extent that it is interpreted to require use of the headquarters subfactor methodology employed by the Department in its effort to handle the unusual situation presented by PPG's headquarters. Alternatively, at the present juncture in the case, the Court could achieve the same result by adopting the fourth remedy proposed by the Commonwealth Court on remand, namely, "[i]nterpret[ing] the exemption to exclude any corporate assets not strictly incident or appurtenant to the manufacturing business, that is, PPG's corporate headquarters." *See* Majority Opinion, at 265. In either event, the taxing statute would remain intact. Applying either such construction would comport with our duties under the Statutory Construction Act to interpret tax exemptions strictly against the taxpayer and to uphold legislative enactments where this can reasonably be done. Barring either outcome, if the General Assembly were to amend the manufacturing exemption to exclude headquarters payroll, property, and sales, the resulting legislation would pass Commerce Clause scrutiny.

Justice CASTILLE joins this dissenting opinion.

9. We need not decide whether the same planning and other administrative functions would qualify for the exemption if they occurred on-site at the manufacturing plants, as that question is not before the Court.